OCEAN ACCIDENT AND GUARANTEE CORPORATION, LIMITED, APPELLANT, v. LINCOLN NATIONAL BANK, RESPONDENT.

Submitted February 17, 1933—Decided May 15, 1933.

For the appellant, *Kalisch & Kalisch*.

For the respondent, *Louis Auerbacher, Jr.*

The opinion of the court was delivered by

LLOYD, J. The plaintiff sued to recover moneys collected by the defendant bank on a forged endorsement. The defendant moved to strike out the complaint and the Circuit Court judge granted the motion, filing a short opinion in

which he held that the affidavits *pro* and *con* established that the plaintiff ratified the act of its agent who had authorized the payment.

We think this was wrong and that a jury question was raised by the pleadings and the affidavits. The Negotiable Instruments act of 1902, expressing also the rule of the common law, provides in section 23, page 588, that "where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority."

The signature having been forged, it was necessary for the bank to show facts which precluded the plaintiff from setting up the forgery as a defense.

The affidavits disclosed that a draft had been drawn to the order of one Joseph Johnson but never endorsed by him. Shoemaker, purporting to be the Newark superintendent of the plaintiff, endorsed Johnson's name, took it to the bank and got it cashed. All that there was to justify this payment was that since June, 1929, numerous drafts had been presented to the bank signed by Shoemaker at the right-hand corner on the face of the draft; that Rudd, manager of the plaintiff's Newark office, had brought Shoemaker to the bank stating that he was the Newark superintendent of claims and authorized to sign claim drafts; that Shoemaker would bring the drafts to the bank and endorse on the back "O. K., Julian M. Shoemaker." There is no statement in the affidavit that Rudd was authorized to make any representation on behalf of the plaintiff as to the powers of Shoemaker. The affidavit of the plaintiff in reply stated that it had no knowledge that Shoemaker presented these drafts unaccompanied by the payee and had them cashed by the defendant, that the bank was never authorized by the plaintiff to cash any checks or drafts signed or endorsed by Shoemaker, that it had no knowledge

prior to February 27th, 1931, when this particular payment came to its knowledge, of the fraudulent acts of Shoemaker and at once notified the bank and demanded reimbursement for the moneys thus unlawfully obtained from its deposits in the National City Bank.

The authority of Rudd to speak for the plaintiff is not averred in the defendant's affidavit, and his endorsement of Shoemaker's right to sign claim drafts established nothing, and particularly is this true in view of the denial of such right by the affidavit presented on behalf of the plaintiff. Nor could ratification of the action of Shoemaker be inferred in the face of the denial of all knowledge by plaintiff of his fraudulent acts.

For both of these propositions our cases are abundant and uniform, the most recent being that of the *Passaic-Bergen Lumber Co.* v. *United States Trust Co.,* 110 *N. J. L.* 315.

The judgment is reversed.

*For affirmance*—THE CHIEF JUSTICE, KAYS, HETFIELD, DEAR, DILL, JJ. 5.

*For reversal*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, WELLS, JJ. 10.