OCEAN ACCIDENT AND GUARANTEE CORPORATION, LIM-
ITED, PLAINTIFF-APPELLANT, v. LINCOLN NATIONAL
BANK, DEFENDANT-RESPONDENT.

Submitted February 16, 1934—Decided April 12, 1934.

For the appellant, *Isidor Kalisch.*

For the respondent, *Louis Auerbacher, Jr.*

The opinion of the court was delivered by

PERSKIE, J. This appeal brings up for review a judgment of nonsuit in favor of the defendant-respondent and against plaintiff-appellant.

In this case the appellant seeks to recover from the respondent bank the money paid out by the latter on a draft of the former because of an endorsement of the payee's name by some one other than the payee, after the bank in the ordinary course of its business forwarded the draft to the appellant (drawer) and received the money paid out by it.

The facts are as follows: On November 29th, 1930, a draft in the sum of $600 was drawn by one Julius M. Shoemaker, on the Ocean Accident and Guarantee Corporation, Limited, a corporation (hereinafter called the plaintiff) to be presented for acceptance by it. The payee's name was Joseph Johnson. Julius M. Shoemaker, the drawer of the draft, was employed by the plaintiff and had authority to draw drafts on plaintiff. He frequently did so (making workmen's compensation payments) in furtherance of the plaintiff's business. Joseph Johnson was one who was receiving such payment from the plaintiff. He was known to both plaintiff and Shoemaker. The latter presented the draft to the Lincoln National Bank, a corporation (hereinafter called the defendant) with the name of Joseph Johnson endorsed thereon, together with the additional words "O. K. Julius M. Shoemaker" written at right angles to the place for regular endorsements. Joseph Johnson did not endorse the instrument. Defendant paid the $600 to Shoemaker, as it had done on other occasions in lesser amounts, at the "O. K." of Shoemaker, and several days later presented it through usual banking channels to plaintiff. The instrument appears to have a stamp of the defendant on it guaranteeing all prior endorsements. Proof, however, as to its authenticity is challenged. The draft was paid and the $600 received by the defendant. Later, about February 27th, 1931, plaintiff notified defendant that the purported endorsement of Joseph Johnson was a forgery and made demand for reimbursement of the $600. This was refused. Suit followed. At the conclusion of the plaintiff's

proofs defendant made a motion for a nonsuit and the trial judge granted it.

The sole ground of appeal is that in this ruling the trial judge erred.

This court has heretofore considered this case on the review of an order striking out the complaint. 111 *N. J. L.* 58; 166 *Atl. Rep.* 157. On the motion to strike, affidavits were presented by each party. This court, in an opinion by Mr. Justice Lloyd, reversing the action of the court below, held that "* * * the signature of the payee having been forged it was necessary for the bank to show facts which precluded the plaintiff from setting up forgery as a defense." The basis for this ruling is contained in section 23 of our Negotiable Instruments act (3 *Comp. Stat., p.* 3738; *Pamph. L.* 1902, *ch.* 84, *p.* 588), which provides as follows:

"Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

In the case *supra,* the court, on page 60, further held:

"The authority of Rudd to speak for the plaintiff is not averred in the defendant's affidavit, and his endorsement of Shoemaker's right to sign claim drafts established nothing, and particularly is this true in view of the denial of such right by the affidavit presented on behalf of the plaintiff. Nor could ratification of the action of Shoemaker be inferred in the face of the denial of all knowledge by plaintiff of his fraudulent acts.

"For both of these propositions our cases are abundant and uniform, the most recent being that of *Passaic-Bergen Lumber Co.* v. *United States Trust Co.,* 110 *N. J. L.* 315."

The facts, as disclosed in the affidavits on the motion to strike the complaint and which formed the basis of the previous adjudication, were proven at the trial of the instant case.

If a jury question existed then, it, of course, exists now, unless some new element was interposed in the instant case. *Ross* v. *Sparks,* 81 *N. J. Eq.* 117; 88 *Atl. Rep.* 384; *affirmed,* 81 *N. J. Eq.* 211; 88 *Atl. Rep.* 385.

Was a new element presented in this case? The question whether the payee's name was a forgery, was in the former case. Defendant, in the instant case, in its answer denied the forgery. Plaintiff produced its proof in support of its claim that it was a forgery. Defendant's cross-examination of plaintiff's witnesses was directed and aimed to the end of procuring an admission, or developing an inference or inferences from which the jury might find that the plaintiff, by reason of its conduct in the premises, was precluded, or estopped from setting up the forgery. True it is that the defendant offered no proof. But, that is immaterial. It is not the test. The test is as laid down by this court in *Finnegan* v. *The Goerke Co.,* 106 *N. J. L.* 59, wherein Chancellor Walker held:

"In *Bennett* v. *Busch,* 75 *N. J. L.* 240, the Supreme Court held that where fair-minded men might honestly differ as to the conclusions to be drawn from facts, whether controverted or uncontroverted, the question at issue should go to the jury. And in a conflict of testimony, when the facts found by the jury will sustain the verdict, the court will not set it aside, although in their opinion the jury might, upon the evidence, have found otherwise."

A verdict of a jury may rest on inferences such as jurors are permitted to draw. *Queen* v. *Jennings,* 93 *N. J. L.* 353; *Glaser* v. *B. V. D. Sales Corp.,* 112 *Id.* 179; 170 *Atl. Rep.* 49.

But the learned trial judge misconceived the law in the premises and held, and it is now urged in support of that holding, that the draft was payable to a fictitious or non-existent payee and hence it follows that it became payable to bearer. In support of that conclusion it is asserted and argued that section 9, paragraph 3 of our Negotiable Instruments act is controlling. It provides as follows: "* * * the instrument is payable to bearer; * * * When it is so payable to the order of fictitious or non-existing person and

such fact was known to the person making it so payable * * *."

It would appear that sufficient answer to this contention is to be found in the portion of the aforesaid section, "* * * *and such fact was known to the person making it so payable. * * *." In *Montgomery Garage Co.* v. *Manufacturers Liability Insurance Co.*, 94 *N. J. L.* 152, this court in an opinion by Mr. Justice Trenchard (at *p.* 154), held:

"We do not rest the plaintiff's right to recover upon section 9 of the Negotiable Instruments act. *Comp. Stat., p.* 3736. The check cannot be said to have been payable to bearer by force of that section declaring that 'the instrument is payable to bearer * * * when it is payable to the order of fictitious or non-existing person, and such fact was known to person making it so payable,' *because it does not appear that such fact was known to the drawer.*" See, also, *Rivara* v. *Delaware, Lackawanna and Western Railroad Co.*, 98 *N. J. L.* 290.

Did Shoemaker know as a fact that Joseph Johnson was a fictitious person or that he did not exist? The proof is plenary that Johnson met Shoemaker at the plaintiff's office and had dealings with him in connection with his compensation. The draft bore a very significant explanation. It was as follows:

"In settlement of compensation for permanent disability from Feb. 8, 1933 to October 14, 1933. This is a commutation which is deducted from the rear end of compensation payments. In re: 16 EY 34966—Harry Steelman—Joseph Johnson, Permanent 114—7/34 to 149½ Wk."

That Joseph Johnson had a claim for permanent compensation and that there could have been a lump sum settlement in the neighborhood of $600 is not seriously disputed. It also appears that the plaintiff upon paying the draft intended that Johnson was to receive the money represented by the draft. It is, therefore, quite obvious that Joseph Johnson was a real, existing person whose identity was well known to the person making the draft payable to him.

We desire, however, to point out that there are cases con-

struing this section of the act (section 9, paragraph 3) which do not deem the mere physical existence of the payee as conclusive. These cases hold that the words "fictitious persons" are not limited to persons having no real existence. (See cases collated under caption Case Notes, 5 *Uniform Laws Annotated* (Negotiable Instruments Law) 82, and 1933 supplement thereto—at *p.* 17.) The following are a few of the many so holding and are illustrative:

"Whenever the name inserted as that of the payee is so inserted by way of pretense merely, without any intention that payment shall only be made in conformity therewith, the payee is a fictitious person within the meaning of the statute, whether the name be that of an existing person or of one who has no existence, and that the bill may in each case be treated by a lawful holder as payable to bearer." *Muller* v. *Liberty Insurance Bank* (1920), 187 *Ky.* 44; 218 *S. W. Rep.* 465.

"A fictitious person within the contemplation of the act * * * is not merely a non-existing one, for, if so, the word 'non-existing' would have been sufficient without more. It is clear, then, that when the legislature declared that a check payable to a 'fictitious or non-existing person' is to be regarded as payable to bearer, it meant a fictitious person to be one who, though named as payee in a check, has no right to it, or the proceeds of it, because the drawer of it so intended, and it, therefore, matters not whether the name of the payee used by him be that of one living or dead, or of one who never existed." *Snyder* v. *Corn Exchange National Bank* (1908), 221 *Pa. St.* 599; 70 *Atl. Rep.* 876; 128 *Am. St. Rep.* 780. See, also, cases cited in support of the holding that knowledge on the part of the person making a negotiable instrument that he is making it payable to a fictitious person is essential that it be treated as payable to bearer, and the question whether such knowledge was possessed by the maker is one of fact. 5 *Uniform Laws Annotated, supra.*

The jury in the instant case might well have found, on the proofs and the legitimate inferences therefrom, that Johnson was not a "fictitious person."

It is the well established law that on a motion to nonsuit or to direct a verdict, the court cannot weigh the evidence, but must take as true all evidence supporting the view of the party against whom such motions are made and give him the benefit of all legitimate inferences therefrom. *Lipschitz* v. *New York and New Jersey Produce Corp.,* 111 *N. J. L.* 392; 168 *Atl. Rep.* 390; *Finnegan* v. *The Goerke Co., supra;.* *Jackson* v. *Delaware, Lackawanna and Western Railroad Co.,* 111 *Id.* 487; *Glaser* v. *B. V. D. Sales Corp., supra.*

We are of the opinion that the jury, fair-minded men, might honestly have differed as to whether or not the plaintiff by its proofs and the legitimate inferences that could have been drawn therefrom, had established a *prima facie* case.

Since, in all probability, it may be necessary to retry this cause, we desire to point out that, even on the theory that the name of the payee was a fiction, there arises the question whether there was any duty on the part of the defendant bank to investigate the authority of the agent, Shoemaker, to cash the draft. The draft was, as indicated, particularly earmarked. The defendant bank paid this corporate and earmarked draft drawn and approved by the "O. K." of its agent, to its agent, when on the face of the instrument it was made payable to one who had a claim against the corporation. Shoemaker's authority to cash the draft in the instant case was denied. Under such circumstances, our cases hold that it is the duty on the part of the bank to investigate the authority of the agent in the premises. *Passaic-Bergen Lumber Co.* v. *United States Trust Co., supra; Singer Sewing Machine Co.* v. *Citizens National Bank and Trust Company of Englewood,* 111 *N. J. L.* 199; 168 *Atl. Rep.* 32; *affirmed, ante, p.* 497.

Did the defendant bank discharge that duty? This, again, created an issue, a jury question, and this is so irrespective of the fact, as we have already pointed out, that defendant did not controvert plaintiff's proofs.

Finally, the learned trial judge held, and again that holding is urged on this appeal, that section 62 of our Negotiable Instruments act (3 *Comp. Stat., p.* 3742) justified the nonsuit.

This section is as follows:

"The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance; and admits: (1) The existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument; and (2) The existence of the payee and his then capacity to endorse." *Pamph. L.* 1902, *p.* 594.

The plain language of the section clearly indicates that the acceptance of a draft does not admit the genuineness of the payee's signature. It merely admits the existence of the payee and his then capacity to endorse. There was a payee who had capacity to endorse, and, since it is clear that he did not endorse, hence his purported endorsement necessarily was a forgery. In a fairly recent and similar case, the Supreme Court of Pennsylvania, in *National Fire Insurance* v. *Mellon National Bank* (1923), 119 *Atl. Rep.* 910, in a learned opinion by Mr. Justice Schaeffer, considered the same sections of the Negotiable Instruments act involved on this appeal, and disposed adversely of like contentions to this made by the defendant in this case. In that case it was held, *inter alia:*

"The acceptance of a draft does not admit the genuineness of the endorser's signature. 'Moneys paid upon checks and drafts which have been forgeries either in the body of the instruments or the endorsements, or in any respect, except the name of the drawer, have uniformly been held recoverable as for money paid by mistake.' *Whitely on Bills, Notes and Checks* (1917) 188.

" 'The drawee of a bill of exchange is conclusively presumed to know the signature of the drawer, and if he accepts or pays, in the usual course of business, a bill whereon the signature of the drawer is a forgery, he will be estopped after to deny the genuineness of such signature. But the drawee is not chargeable with knowledge of any other signature on the bill of exchange, and by accepting or paying the bill does not admit the genuineness of any endorsement on it. The acceptor is not deemed to admit the signature of the payee.' 3 *R. C. L.* 1145.

" 'Acceptance does not admit the genuineness of the signature of the payee or of any subsequent endorser, but the signatures of all endorsers necessary to transfer title to the holder must be proved in order to obtain judgment against the acceptor.' 8 *Corp. Jur.* 332."

And the court held that the construction aforesaid was not in any conflict with section 62 of the act.

We are of the opinion that a nonsuit in the instant case is no more justified now than a summary judgment was in the former case.

Judgment is reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 16.