[No. 14661.  Department One.  June 15, 1918.]

## A. G. DENBIGH, *Appellant,* v. FIRST NATIONAL BANK OF SEATTLE, *Respondent.*[1]

BANKS AND BANKING—PAYMENT OF FORGED CHECK—EVIDENCE—SUFFICIENCY.  In a depositor's action to recover from a bank the amount paid out on a forged check, there is sufficient evidence of the forgery, where plaintiff testified that he did not sign the check, which disappeared when, during his absence, it came into the hands of his bookkeeper who absconded, having also forged another check about the same time.

SAME—PAYMENT OF FORGED CHECK—LIABILITY—DEFENSES—NEGLIGENCE OF DEPOSITOR.  A bank has no right to charge against the depositor the amount paid out on a forged check, unless the depositor is estopped by his course of conduct, negligence or laches; and negligence is not shown by the employment of a bookkeeper who was recommended by a reputable firm, without notice of a previous criminal charge against him under an assumed name.

SAME—PAYMENT OF FORGED CHECK—NOTICE BY DEPOSITOR—LIMITATIONS.  In view of Rem. Code, § 3363, limiting a bank's liability to depositors on forged checks, unless notice be given the bank within sixty days, a shorter limitation by contract will not be assumed from the fact of printed notice on the pass book requiring notice to be given within ten days, where the same was not specially called to the depositor's attention.

SAME—PAYMENT OF FORGED CHECK—NOTICE BY DEPOSITOR—DILIGENCE.  Diligence in giving notice of the payment of a forged check is shown where it appears that the depositor was absent when his bookkeeper, who committed the forgery, receipted for the vouchers, that he employed another bookkeeper within five days, and discovered the forgery within eight days, after his return and immediately gave notice thereof to the bank.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered September 7, 1917, upon findings in favor of the defendant, in an action to recover money paid on a forged check, tried to the court.  Reversed.

[1] Reported in 174 Pac. 475.

*Herr, Bayley & Croson,* for appellant.

*Hughes, McMicken, Ramsey & Rupp,* for respondent.

TOLMAN, J.—Appellant brought this action to recover $3,500 from the respondent, which amount he alleges was wrongfully paid out by the respondent on a forged check and charged to his account.

The complaint is in the usual form, setting up a deposit by the appellant with the respondent bank; that the sum of $3,500 remained so on deposit to his credit; that he drew his check therefor and presented the same and demanded payment, which payment was refused; and demands judgment for the amount thereof.

The answer denies that the appellant then had on deposit $3,500, or any other sum, and affirmatively sets up, first, that the pass book which was furnished by the respondent to the appellant contained on the outside of its front cover the following:

FIRST NATIONAL BANK

Seattle  -  -  -  Wash.

in account with

A G. Denbigh, Purchasing Department

NOTICE

Always bring this book with your deposits. See that the entries agree with your tickets. Please call for your statement on the first of each month, and report difference, if any, at once.

The bank in receiving out-of-town checks and other collections, acts only as your agent and does not assume any responsibility beyond due diligence on its part, the same as on its own paper.

That, at the close of business each month, the respondent, in accordance with the general banking custom, prepared for each of its customers a monthly statement showing the state of the account with such customer, the dates and amounts of checks drawn against the customer's account and cashed by the bank during the month, the amount deposited to the credit of the customer, and the balance standing to the credit of the customer at the close of business for such month;

that each of such statements contained upon its face, in plain type, the following:

"If no error is reported in ten days the account will be considered correct."

The affirmative answer further alleges, that the appellant maintained in his employ as bookkeeper one S. Boyd; that Boyd, on or about the 10th day of January, 1917, called at the bank for the December statement of appellant's account and the canceled checks for that month, and receipted for the same; that thereafter, on February 2, 1917, Boyd called for appellant's January statement of account and canceled checks for the month of January, received the same, and gave the following receipt:

Received of the First National Bank, Seattle, Wash., Statement of vouchers of my (our) account. I (we) agree to examine the statement carefully and if not correct, to give notice and make all reclamations within ten days.

Date balanced, Jan. 31, 1917.
Vouchers returned, 24.
Date received, Feb. 2, 1917.
Denbigh P. Dept. per S. Boyd.

That no objection or complaint was made by the appellant to the correctness of said bank statement, or the genuineness of the canceled checks returned, within ten days after the receipt thereof, or at all, until on or about February 20, 1917; that the January statement so delivered showed the payment of the check now in controversy, and left a balance standing to the credit of the appellant in the sum of $919.38, which sum had been withdrawn prior to the commencement of this action.

The evidence is not conflicting, the only issue being the relative weight to be given to the several parts and the conclusions to be drawn therefrom.

The trial court made findings of fact and conclusions of law which, so far as now material to the matter in

controversy, were in effect: That the appellant opened
the account with the respondent about December 15,
1916, under the name and style of "A. G. Denbigh Pur-
chasing Dept." with the authorized signature of Alex-
ander Denbigh, who was then in charge of the appel-
lant's business in Seattle, supplying the respondent
with the signature upon the usual identification card;
that Alexander Denbigh received from the bank a pass
book containing, among other things, the notice:
"Please call for your statement on the 1st of each
month and report differences, if any, at once;" that
the appellant had in his employ a bookkeeper, one
S. Boyd, who had charge of appellant's books and ac-
counts, including his pass book, and was from time to
time authorized by the appellant to present checks
drawn on said deposit account with the respondent and
receive the cash thereon; that the appellant had em-
ployed Boyd on the recommendation of the Seattle
Hardware Company; that, shortly after the first day
of January, 1917, Boyd presented the appellant's pass
book to the respondent bank and received the canceled
vouchers and statement of appellant's account to and
including December 31, 1916, and signed a receipt
therefor, which had on its face in plain type the follow-
ing: "If no error is reported in ten days the account
will be considered correct;" that, on January 10, 1917,
Boyd presented to the respondent's exchange teller a
check numbered 30, for $3,500, purporting to be signed
by the appellant's authorized signature, namely, "A. G.
Denbigh Purchasing Dept., by Alexander Denbigh;"
that the teller having, in the exercise of due care, ex-
amined said signature and compared the same with the
identification card of the appellant's authorized signa-
ture previously filed with the bank, and having deter-
mined to his satisfaction that the signature on the
check was appellant's true, genuine, and authorized

signature, and that the amount of the check was on deposit to the appellant's credit, the respondent thereupon received the check and paid it by delivering to Boyd its cashier's check to the order of A. G. Spaulding in the sum of $3,500, which cashier's check was subsequently paid and satisfied by the respondent in the ordinary and regular course of business.

The trial court further found, that Boyd again presented the appellant's pass book to the respondent bank on or about the second day of February, 1917, and received and receipted for the canceled checks and statement of appellant's account for the month of January; that Alexander Denbigh was absent from his office and from the city of Seattle from about January 19 until February 12 or 13, 1917; that Boyd left the employ of the appellant on or about February 12, 1917, and absconded from the city of Seattle on or before February 15, 1917; that, prior thereto, while in the appellant's employ, and without his actual knowledge, Boyd had been under arrest in King county for the commission of a crime, upon proceedings instituted by the prosecuting attorney of King county, and upon arraignment had been released upon bond, and had thereafter, in the month of January, 1917, deposited in court in said criminal proceeding an additional cash bond of $1,000 for his appearance; that, immediately upon the return of Alexander Denbigh to Seattle, he employed a bookkeeper to take charge of the appellant's books, and that such bookkeeper discovered a discrepancy of $3,500 between the bank balance as shown by the pass book and the balance as shown by the stubs in the appellant's check book, and called the same to the appellant's attention on or about February 20, 1917, whereupon the appellant immediately notified the respondent thereof.

It will be noted that the trial court has failed to find whether or not the check here in controversy was in fact a forged instrument.

The respondent contends that the burden is upon the appellant to show that the signature to the check in question was a forgery. This is no doubt the law, and we think the appellant did so show by a preponderance of the evidence. The testimony of Alexander Denbigh as to the manner and method of signing checks only while attached and in place in the check book, properly filled out, both as to the stub and the check; the check book itself, which shows no stub numbered 30 to correspond with the check in question; the appellant's complete denial of the signing of such a check; his denial of acquaintance with, knowledge of, or business relations with Spaulding, who received the proceeds, and the significant fact of the disappearance of the check itself when it came into the hands of Boyd, present as complete a case as the circumstances permit; and the persuasive evidence of the forging of another check or checks at about the same time by Boyd on his employer's account in the Bank of California is not needed to enable this court to find that the signature to the $3,500 check involved here was in fact a forgery, and that the forgery was committed by Boyd, the bookkeeper who received the monthly statements of appellant from the respondent on February 2, 1917. Nor is the convincing weight of this proof in any manner overcome or lessened by respondent's suggestion that checks numbered 28, 29, 31 and 32, all shown by the stubs in the check book and bearing the same date as the forged instrument, which is numbered 30, were probably all signed at the same time, and that Boyd might have filled in the body of the check numbered 30, inserted it among the other four checks just referred to bearing the same date, and procured the ap-

pellant's duly authorized signature to the five checks without discovery. This argument rests upon supposition only, and can be sufficiently answered by suggesting that, if Mr. Denbigh's methods and habits as to signing checks were as shown by the testimony, the risk of immediate discovery would have been too great for any one with reasonable judgment to assume. And moreover, if that had been the course followed, check number 30 would never have been destroyed by Boyd, as its continued existence would perhaps have protected him from detection and prosecution.

The implied contract between the bank and its depositor is that the bank will pay out the funds of the depositor only upon order from the depositor to that effect. It follows then, that, if the bank pays out funds upon an instrument purporting to be the check of its depositor, the signature upon which turns out to be a forgery, no right exists in the bank to charge the amount of the item against the account of the depositor, since the payment was wholly without any authority from him. This is elementary and needs the citation of no authorities. The only exception is where the depositor by his course of conduct, negligence or laches has created a condition which estops him.

We are quite clear that the appellant was not negligent in his manner of employing the bookkeeper, Boyd, he having employed him upon the recommendation of a reputable and well known business concern. Nor was he negligent in failing to discover that Boyd had been arrested upon a criminal charge of bigamy. It appears by the testimony that Boyd was going under an assumed name, and nothing in the testimony convinces us that the appellant was put on notice as to Boyd's dishonesty by anything which may have been published in connection with the criminal proceeding.

We are equally clear that the notice printed on the outside or front cover of the bank pass book, and the form of receipt for the monthly statement and vouchers requiring notice to be given within ten days, were not specially called to the appellant's attention and did not become a contract between the parties, and that it was not necessarily negligence on the part of the appellant to fail to comply strictly therewith. We are more specially of this opinion because of our statute, Rem. Code, § 3363, which provides:

"No bank or trust company shall be liable to a depositor for the payment by said bank or trust company of a forged or raised check, unless within sixty days after the return to the depositor of the voucher of such payment, such depositor shall notify the bank or trust company that the check so paid was raised or forged."

While it is true that this statutory provision states the extreme limit within which such notice must be given in order to bind the bank, yet the legislature having fixed a limitation period, we do not favor a shorter limitation period by private contract unless strictly proven. Such a contract should never be presumed. Within the sixty-day statutory period each case must be determined from its own facts; and the question as to what is a reasonable time for the giving of such notice will depend upon the particular circumstances of the particular case, and not upon the arbitrary dictum of the bank.

Was the appellant negligent in not reporting the forgery to respondent bank until February 20, 1917?

It is argued that he was so negligent because knowledge of the forgery will be imputed to him as of February 2, 1917, when Boyd, his bookkeeper and the forger of the check, obtained the statement and can-

celed checks, including the forged instrument, from the respondent bank.

The general rule laid down in 7 Corpus Juris, p. 687, is that:

". . . when a depositor's pass book has been written up and returned to him with the canceled checks which have been charged to his account, it is his duty to examine such checks within a reasonable time and to report any forgeries or alterations which he has discovered, failing in which he cannot, if his failure has resulted in detriment to the bank, dispute the correctness of the payments shown. . . ."

The authorities are by no means in harmony as to what is a reasonable time within which the depositor should report such forgeries or alterations, especially in cases where the employee who is responsible for the forgeries himself obtains the statements and vouchers from the bank. A leading case upon which the respondent seems to rely is that of *Leather Manufacturers' Bank v. Morgan,* 117 U. S. 96, in which it appears that the bookkeeper began his wrongdoing in September, 1880, and continued the same to February 13, 1881, and that his peculations were discovered in March following. The depositor's bank book appears to have been balanced monthly, or at frequent intervals, and if the employer had examined the several balancings, as was finally done in March, 1881, he would have "easily discovered" the wrongful withdrawal of the money. And the court properly held that the employer had failed to exercise that degree of care which, under all the circumstances, it was his duty to do.

Likewise in *Myers v. Southwestern Nat. Bank,* 193 Pa. St. 1, 44 Atl. 280, 74 Am. St. 672, the employee's wrongdoing covered a period of from March, 1891, to November, 1893, during all of which time he received the vouchers and statements from the bank and con-

cealed the facts from his employer.  But the employer was held to have been negligent in never, during all that time, supervising the work of the employee or checking up his account with the bank.

So with all of the cases cited by the respondent upon this point, the period of delay in checking up and supervising the employee guilty of wrongdoing varies from a few months to several years.  And in no case which has been called to our attention, or which we have been able to discover, has the court been called upon to say that a delay of only a few days, such as occurred in this case, was negligence on the part of the depositor.

In *Kenneth Inv. Co. v. National Bank of Republic*, 96 Mo. App. 125, 70 S. W. 173, cited by respondent, where a bookkeeper who forged his employer's signature to twenty-one checks covering a period from June to November, and who obtained the statements monthly from the bank and destroyed the forged checks, thus concealing his crime and keeping open the opportunity to continue, the court says:

"Chatard was engaged in a fraudulent scheme to obtain money on forged checks of his employer.  To have disclosed the payment, cancellation and return of those forged checks would have prevented the consummation of his scheme; and it should not be presumed that he would inform his employer of his crime, and we hold that his knowledge of the forgery should not be imputed to the plaintiff."

In the case at bar, the appellant was absent, presumably in the pursuit of his business, at the time Boyd procured the statement and vouchers on February 2, 1917, and that absence cannot be charged against him as negligence.  While he owed to the respondent bank the duty of supervision of the conduct of Boyd, yet he had a reasonable time in which to exercise supervision and to check up the January statement from the

respondent bank. This duty could not be performed, nor could appellant begin to perform it, until his return to Seattle on February 12 or 13, 1917. The evidence shows without dispute that he then obtained another bookkeeper, who came to work on February 17, or within five days after appellant's return, and who discovered the forgery on February 20, or within eight days after the appellant's return, and that the appellant immediately gave the respondent bank notice of such discovery. We cannot hold that there was any neglect or unreasonable delay shown upon the part of the appellant. And we can hardly conceive of any case where, under like circumstances, greater diligence was, or could be, shown.

Since there was no unreasonable delay in supervising and checking up Boyd's work, in discovering the forgery, and in reporting the forgery to the respondent bank, it becomes unnecessary to inquire whether or not the respondent bank was injured by that delay, which we have found to be reasonable and unavoidable under the circumstances of this case.

The judgment is reversed, and the cause remanded with instructions to enter a judgment in favor of the appellant and against the respondent for $3,500, with interest from March 19, 1917, the date of the demand, at the legal rate, and costs of suit.

MAIN, C. J., FULLERTON, PARKER, and MITCHELL, JJ., concur.