## Mueller & Martin, a Corporation v. Liberty Insurance Bank.

### (Decided February 13, 1920.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

1. Banks and Banking—Authority of Bank to Pay Bearer Out of Maker's Funds.—Where an agent of a corporation, with due authority, draws checks payable to an existing person, but with no intention that the payee shall receive same, and thereafter, without authority, endorses payee's name upon the checks and presents them to the bank upon which they are drawn for payment; held, that the bank was authorized to pay same to bearer out of the maker's funds, notwithstanding the false endorsements and without inquiry.

2. Banks and Banking—Payment of Checks—Negotiable Instruments Act.—Where it was not intended that the person named as payee of such checks should receive or have any interest in same, held that the payee was a "fictitious person," and the checks payable to bearer under subsection 3, section 9, of the negotiable instruments act.

3. Banks and Banking—Fictitious Person—Payment of Checks.—That part of section 9 of the negotiable instruments act which provides that the fact of payee being a fictitious person must be "known to the person making it so payable," refers to the person who draws the checks, rather than to the nominal maker, where an authorized agent draws checks payable to a fictitious person.

BASKIN & VAUGHAN for appellant.

WEHLE & WEHLE for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Appellant, Mueller & Martin is a corporation. George L. Martin had authority to sign its name to checks against its account with appellee bank. He drew seven

checks aggregating $2,972.50 on appellee bank, payable to the German Savings Fund Company Building Association and signed appellant's name thereto. He was also secretary of the building association but had no authority to sign or endorse its name to checks, or receive payments thereof.

He did, however, endorse on all of said seven checks with a rubber stamp the name "The German Savings Fund Co. Building Association." Below that endorsement he signed or stamped his own name and drew the money out of the bank on same. These checks appellee charged against the account of Mueller & Martin.

In this action Mueller and Martin seek to recover of the bank the amount of these checks with interest. A demurrer was sustained to the petition and same dismissed. Plaintiff appeals.

In addition to the above facts the petition alleges with reference to each check that Mueller & Martin was not indebted to the building association in the amount thereof, and had no business with it; that the check was not executed in pursuance of a business transaction, but was simply a scheme or device of George L. Martin to secure the several sums for his own private purposes and uses. That defendant paid the checks with the endorsements thereon without authority in law out of funds belonging to plaintiff and refused to refund same.

The lower court held that the checks were made payable to a "fictitious person" as the term is used in subsection 3 of section 9 of the Negotiable Instruments Act, being subsection 9 of section 3720b Kentucky Statutes, and were by the terms of that act payable to bearer. That therefore the checks, having been issued under authority from the maker, the bank was authorized to pay same to bearer out of the maker's funds regardless of whether prior endorsements were genuine or not, and without inquiry.

This conclusion is fully sustained by many cases decided both before and after enactment of Negotiable Instruments Acts identical in terms on the subject with our act. That this was the accepted rule at common law and before the passage of Negotiable Instruments Acts is sufficiently attested by the following authorities:

In Samuel Foster v. Nathaniel Shattuck, T N. H. 446, it was held:

"When a note however is made payable to the name of some person not having any interest and not intended to become a party in the transaction, whether a person of such name is or is not known to exist, the payee may be deemed fictitious. The name is assumed merely to give form to the instrument. We are inclined to adopt this construction to prevent the note from becoming a nullity when founded on a full and fair consideration. Such construction injures nobody and is no more forced than to hold that when the name of the payee is left blank it is the same thing as if the defendant had made the bill payable to bearer."

Coggill v. American Exchange Bank, 1 N. Y. (Comstock) 113:

"As the payee had no interest and it was not intended that he should ever become a party to the transaction he may be regarded in relation to the matter as a nonentity and it is fully settled that when a man draws and puts in circulation a bill that is payable to a fictitious person the holder may declare and recover upon it as on a bill payable to bearer."

Bartlett v. First National Bank of Chicago, 247 Ill. 490:

"The drafts drawn by R. L. Walsh in the name of the appellants against themselves were all made payable to some person who resided near Reddick or bearer and in the sense that there were such individuals as payees, the payees named in the draft were not fictitious persons. At the time, however, Walsh drew said drafts, he did not intend that the persons, whose names were inserted as payees in said draft should have any interest in said draft or that said draft should ever be delivered to said payee or that said payee should endorse said draft in order to receive payment therefor or for the purpose of negotiating the same. In the eye of the law, therefore, the payees named in the draft were not *bona fide* payees but mere fictitious persons. Said drafts were, therefore, in law payable to bearer and were transferable, therefore, by delivery, and upon their receipt by appellee payment thereof could be enforced against the appellants by the First National Bank of Chicago without claiming through the said forged indorsements but as the holder of negotiable paper made payable to bearer."

Not only was this the common law rule but statutes containing the identical terms of our Negotiable Instru-

ments Act have been construed to have this effect. The English Bill of Exchange Act enacted in 1882 has been largely copied into negotiable instrument laws adopted in this country. Section 9 of our act is a literal copy of section seven of that act. In construing this section it was held by the House of Lords in Bank of England v. Vagliano, L. R. 1 A. C. 107, that:

"Whenever the name inserted as that of the payee is so inserted by way of pretence merely without any intention that payment shall only be made in conformity therewith, the payee is a fictitious person within the meaning of the statute whether the name be that of an existing person or of one who has no existence and that the bill may in each case be treated by a lawful holder as payable to bearer."

The negotiable instrument law of Pennsylvania contains the identical provision as section 9 of our act.

In Snyder v. Corn Exchange National Bank, 221 Pa. 299, a case arising under that law, the facts were entirely analogous to those of the case at bar. Greenfield, a clerk for Harrison Snyder & Son, had authority to draw checks against its account with the Corn Exchange National Bank. He drew checks payable to Chas. Nieman, a man who had no business relations with the firm, and forged Nieman's endorsement. The bank paid the checks and charged them against the firm's account. The firm sued to recover just as has appellant here. The court held the firm could not recover because the payee was a fictitious person and the check payable to bearer within the meaning of the Negotiable Instrument Act.

To the same effect is Trust Co. of America v. Hamilton Bank, 112 N. Y. S. 84, construing the similar provision of the New York act.

These authorities would seem conclusive of this case, especially as counsel for appellant admit they can find none to the contrary, but they earnestly insist the very terms of our act, upon a point not discussed in either the Pennsylvania or the New York case, *supra,* require a different construction.

Our act, insofar as applicable is as follows:

"The instrument is payable to bearer:

.   .   .   .   .   .   .   .   .   .   .   .   .

"Third: When it is payable to the order of a fictitious or non-existing person and such fact is known to the person making it so payable."

It is insisted, conceding the payee to be a fictitious person as the term is used, the check is not payable to bearer unless also "such fact is known to the person making it so payable."

Appellant would have us construe this clause "and such fact is known to the person making it so payable," as applicable to the maker of the bill rather than "the person making it so payable." That is, that Mueller & Martin must be chargeable with notice that the checks were made payable to a fictitious person before the checks can be considered as payable to bearer. If this were its meaning then the whole provision would be ineffective in practically every case where the purpose of the person drawing the check was fraudulent, since where such is his purpose his principal is not chargeable with notice of his agent's acts done in the apparent scope of his authority but with a purpose to defraud the principal. Ohio Valley Banking & Trust Co. v. Citizens National Bank, 173 Ky. 640.

Such, however, is not its meaning, as is plain from the very language employed as well as the evident intent of the enacting power.

The words "the person making it so payable," given their ordinary meaning, refer to the person who actually drew the bill, whether he be the nominal maker or not. Had the legislature intended that this should refer not to the person drawing the check but to the nominal maker more fitting language certainly would have been employed, as might easily have been done. Not only so, but to give the clause the strained construction urged by appellant rather than the ordinary meaning of the language employed would pervert the very purpose of the provision.

The enactment was to make negotiable and with safety to those handling it, a bill which otherwise would have been quite difficult, if not impossible, of negotiation. Purposely made payable to a non-existent or fictitious person by the person who drew it in that shape for his own convenience, how could it be validly endorsed and put in circulation by such a payee? Its payment by the maker might be defeated most easily if not always by simply denying the validity of the endorsement the bill carried when presented. Hence, even before negotiable instruments acts were adopted, endorsements of such payees were held immaterial and the bill was treated as

payable to bearer. The negotiable instrument laws were enacted with full knowledge of these facts and are always construed as declaratory merely of the law merchant unless plainly a change was intended.

This provision is therefore to be construed as a statutory declaration of what had already been worked out in practice as a safe rule of trade and approved by judicial pronouncement. And when this meaning has the further approval of subsequent judicial interpretation, it would be little short of recklessness to venture a different construction, especially at the instance of one who confesses his inability to cite authority of any kind therefor.

In both the New York and the Pennsylvania cases cited above, and which construed the similar provisions of the Negotiable Instruments Acts of those states, this question, though not discussed, was presented on the facts. In both cases it is plainly assumed that the clause under discussion referred to the person who drew the check, rather than the maker. In the New York case the court says:

"The averment in the affidavit of defense is that Nieman was not a real *bona fide* payee but was in legal contemplation a fictitious person, such fact having been well known to Greenfield at the time he drew the checks."

When it is conceded that the person who drew the check to a fictitious person had authority from the maker to so do, the maker, rather than the innocent holder, should in good conscience bear the loss resultant upon the perfidy of the maker's chosen agent in the application of the funds. Any other conclusion would be monstrous as well as violative of the very terms of the statute enacted unquestionably to avert such a result.

Wherefore the judgment is affirmed.