304 P.2d 582

**FIRST THRIFT and LOAN ASSOCIATION,**
a corporation, Plaintiff-in-Error,

v.

**STATE of New Mexico, on the relation of
Richard H. ROBINSON, Attorney General
for the State of New Mexico, Defendant-
in-Error.**

No. 6091.

Supreme Court of New Mexico.

Oct. 8, 1956.

Rehearing Denied Dec. 28, 1956.

Wilson & Whitehouse, Albuquerque, Harry L. Bigbee, Santa Fe, for plaintiff in error.

Richard H. Robinson, Atty. Gen., Fred M. Standley, Asst. Atty. Gen., John D. Murphy, William A. Sloan, Sp. Assts. Atty. Gen., for defendant in error.

SADLER, Justice.

The defendant below, appearing in this Court as a plaintiff in error, seeks review of a judgment of the district court of Bernalillo County in a proceeding by quo war- ranto ousting, enjoining and restraining it from exercising its purported corporate powers to transact a banking business within the state of New Mexico and to desist from soliciting, receiving or accepting deposits of money, or lending money so deposited. In other words, the judgment complained of barred plaintiff in error from thereafter acting as if a bank.

No single way of bringing out quickly the issues in the case and the trial court's rulings suggests itself than to copy the trial judge's findings of facts and conclusions of law. They read:

"Findings of Fact

"1. The relator is Attorney General of New Mexico and the respondent is a New Mexico corporation with its principal office in Albuquerque.

"2. The respondent was on February 25, 1954 incorporated under the general incorporation statutes of New Mexico, now N.M.S. (1953 Comp.) c. 51, art. 2; and has not been incorporated in accordance with the banking incorporation statutes of this state (N.M.S.1953 Comp.) c. 48, art. 2.

"3. The respondent's Articles of Incorporation and the amendment thereto are exhibit A of the Petition and Exhibit A of the Answer respectively.

"4. Since approximately June 1954 the respondent has engaged in the

banking business as that is defined in N.M.S. (1953 Comp.) c. 48, art. 1 and § 48–8–8 and has advertised itself as being authorized to do acts which comprise banking as so defined, specifically accepting deposits from customers and loaning said deposited money.

"5. The petitioner, State of New Mexico, is not estopped nor guilty of laches with respect to the present proceeding by reason of (a) the opinion of the Attorney General dated June 7, 1954 referred to in the evidence in this cause (b) by the enactment of L. '55, c. 98.

"Conclusions of Law

"1. The respondent has not been granted the power to engage in the banking business nor to do the acts which comprise banking nor to advertise itself as being authorized to do so.

"2. That a corporation must be incorporated under N.M.S. (1953 Comp.) chapter 48, article 2, in order to transact a banking business.

"3. The respondent has since approximately June 1954 usurped, intruded into and unlawfully exercised the purported franchise power and function of a corporation licensed to transact banking business in the State of New Mexico.

"4. The court has jurisdiction to enter a judgment herein ousting the respondent from such unlawful exercise of a purported power to do a banking business.

"5. The petitioner, State of New Mexico, is not estopped nor guilty of laches with respect to the present proceeding by reason of (a) the opinion of the Attorney General dated June 7, 1954 referred to in the evidence in this cause, (b) by the enactment of L. '55, c. 98.

"6. N.M.S. (1953 Comp.) c. 48, art. 2 is not unconstitutional as violative of N.M.Const. Art. 11, § 6; nor of N.M. Const. Art. 2, § 18, as asserted by the respondent in its answer.

"7. A judgment should be entered herein in accordance with the prayers of the Petition.

"s/ John B. McManus, Jr.

District Judge".

■ The plaintiff in error has in its Point 1 gone right into the merits of this case by contending that where corporations divide their business operation into two departments and properly segregate their capital and records they may engage in a phase or phases of the banking business when permitted so to do by their charter issued under the general incorporation laws of the state of New Mexico, subject to the regulatory provisions of the banking act and supervision of State Bank Examiner as provided in 1953 Comp. § 48–2–15.

The State on the relation of Richard H. Robinson as Attorney General, appearing before us as defendant in error, flatly rejects the contentions of plaintiff in error in this behalf and puts forward in its answer brief as its Point 1 a direct challenge to the correctness of its adversary's Point 1 in a very succinct proposition reading, as follows:

"A corporation cannot organize under the general corporation laws and thereafter conduct a banking business whether or not said corporation has two departments."

With the issue thus joined, the position of the one party in diametrical opposition to that of the other, there should be no confusion or uncertainty about where the parties stand. We sense none. Before launching into a discussion of this prime issue in the case, a decision of which is of such vital importance, we may as well state now that in our further treatment of this and other issues raised, we shall refer to the parties as they were aligned and designated below, the defendant in error here as *petitioner* in moving for a writ of quo warranto, and the plaintiff in error here, as *respondent* against whom the writ was directed.

Three pertinent statutes suggest themselves with a definite bearing on the question at issue. Indeed, they appear to be the only statutes having an easily recognized relevancy in the matter. The first is 1953 Comp. § 51–2–6, L.1905, c. 79, § 5, as amended by L.1917, c. 112, § 1, which, so far as material, reads:

"*Purposes for which corporations may be formed.*—Upon executing, filing and recording a certificate pursuant to all the provisions of this article, three (3) or more persons may become a corporation for any lawful purpose or purposes whatever, except corporations for the construction and operation of railroads, telegraph lines, express companies, *savings banks,* commercial banks, trust companies, building and loan associations, insurance, surety, and irrigation companies * * *." (Emphasis ours.)

The significant thing about the quoted portion of the section mentioned, being a part of our general incorporation statute, is that it excludes "savings banks" from its purview. In other words, if the purpose, or one of the purposes of incorporating, is to operate a savings bank, this statute is not available.

We turn next to another pertinent statute, 1953 Comp. § 48–14–1, L.1903, c. 109, § 1, as amended by L.1929, c. 131, § 1, which, so far as at present material, reads:

"*Mercantile companies—Banking business—Paid-in capital stock—Certificate.*—Any number of persons, not less than three (3), may associate to establish mercantile companies and companies for trade and business,

which corporation or association may in addition to the things now allowed by the laws of this state transact a general banking business, upon the terms and conditions and subject to the liabilities now prescribed by the laws of this state, relating to corporations and associations in towns and cities, having a population according to the last United States census, of less than fifteen hundred (1,500) inhabitants, and the aggregate amount of the capital stock of such corporation or association shall not be less than thirty thousand dollars ($30,000.00) * * *."

It will be observed that this section applies only to companies doing business in towns and cities, having a population of less than 1500 inhabitants, according to the last United States census. The City of Albuquerque, where respondent was organized and has its principal place of business and carries on the banking phase of its business is, of course, a city almost 100 times larger than the maximum allowed as the site for the banking business contemplated by this statute.

The third statutory provision relating to the incorporation of companies to engage in the banking business will be found in 1953 Comp. § 48-2-1 through 48-2-5. In as much as the respondent disclaims having been organized under these sections, it would seem unnecessary to quote them. It is worthy of mention, however, that these sections represent the only statutory authority in New Mexico for forming a corporation to conduct a banking business in cities and towns having more than 1500 population. Why do we say this? Because the legislature itself has said so in plain and unmistakable language. Let us confirm the accuracy of this statement.

It is provided by 1953 Comp. § 48-1-3, as follows:

*"Formation of corporation.*—Corporations may be formed under the laws of this state to conduct, as provided in this act, and not otherwise, any one or all of the businesses mentioned in divisions a, b and c of section 2 (48-1-2) of this act and as defined in sections 4, 5 and 6 (48-1-4 to 48-1-6) of this act."

The other sections and subsections mentioned in the section just quoted, supra, read as follows:

*"48-1-2. 'Bank' defined.*—The word 'bank' as used in this act includes every person, firm, company, copartnership or corporation, except national banks, engaged in the business of banking in the state of New Mexico. Banks are divided into the following classes:

"(a) Commercial banks;

(b) Savings banks; and

(c) Trust companies."

"48-1-4. *'Commercial bank' defined.*—The term 'commercial bank,' when used in this act means any bank authorized by law to receive deposits of money, deal in commercial paper or to make loans thereon, and to lend money on real or personal property, and to discount bills, notes, or other commercial paper, and to buy and sell securities, gold and silver bullion, or foreign coins or bills of exchange."

"48-1-5. *'Savings bank' defined.*—The term 'savings bank,' when used in this act, means a bank organized for the purpose of accumulating and loaning the funds of its members, stockholders, and depositors, and which may loan and invest the funds thereof, receive deposits of money, loan, invest and collect the same with interest; and invest its funds in such property, securities and obligations as may be prescribed by this act."

"48-1-6. *'Trust company' defined.*—The term 'trust company,' when used in this act, means any company which is incorporated for the purpose of conducting the business of acting as executor, administrator, guardian of estates, assignee, receiver, depository, trustee and such other purposes as hereinafter specifically set forth in section 60 (48-5-3) of this act."

It requires no profound thinking to see through the reason for the enactment of a statute containing special provisions for the incorporation of banks. The business of banking is one teeming with the public interest. The welfare of the public, that is, of stockholders, depositors, borrowers, and others with whom a bank does business, confronts one at every turn.

Thus it is that before a charter can issue the State Bank Examiner must find (1) that the organizers are persons of good moral character and reputation who have established financial responsibility; and (2) that the proposed field of activity for the new bank is fairly calculated to support an additional bank with safety to prospective depositors therein and to depositors in other and existing banks.

The legislature provided the safeguards mentioned for the protection of the public in general and depositors in particular. Hence, it is not at all surprising that in order to assure this protection, it has provided no corporation should be organized, having as one of its purposes the conduct of a savings bank, except through the banking sections mentioned above; or, in the case of cities and towns of less than 1500 population, through the incorporation of a mercantile company with banking as one of its departments.

The respondent having admitted that it is not organized, that is incorporated, under either the banking act or the so called mercantile act, represented by the appropriate

sections mentioned above, but under the general incorporation laws instead, it follows as night the day that no legislative authority exists, or has ever existed, for its banking business. Accordingly, the trial court was eminently correct in concluding, from the findings adopted, that respondent should be ousted from the conduct of such business as an interloper or intruder and in rendering the judgment it did.

So well satisfied are we with the conclusion just announced, that from our own standpoint further discussion on the merits of the appeal would be superfluous. Indeed, if we correctly understand respondent's position it consists of two parts. They are, (1) that our statutes contemplate the organization of a corporation which may segregate its business, or divide it, into two or more departments, one of which may be the operation of a savings bank; and (2) that whether so or not by a series of opinions of the Attorney General over the years and by virtue of claimed legislative recognition of the correctness of such a conclusion through an amendment to L. 1915, c. 67, § 9, 1953 Comp. § 48-2-15, the petitioner (the State) should be and is estopped to question the position taken by respondent.

■ ▇ There are several answers to the claim of respondent that there exists legislative sanction for its organization under the general incorporation laws to conduct a savings bank as a separate phase of its business. In as much as 1953 Comp. § 48-14-1, quoted, supra, provides for the creation and chartering of mercantile companies and companies for trade and business, with special leave therein to conduct a "general banking business * * * in towns and cities, having a population according to the last United States census, of less than fifteen hundred (1,500) inhabitants," etc., a simple application of the doctrine of *expressio unius est exclusio alterius* would, in and of itself, proscribe the authority claimed by respondent to exist. To elucidate, if as seems the case, the statute in question authorizes mercantile corporations to carry on as one phase of their business a savings bank, in towns of less than 1500 population, by the same token, it would deny even mercantile corporations the authority to do so in towns of more than 1500 population. Territory v. Ortiz, 1 N.M. 5; Thurman v. Grimes, 35 N.M. 498, 1 P.2d 972.

As if this were not enough to deny validity to respondent's claim, we may pertinently inquire how and wherein may it claim the benefit to be found in 1953 Comp. § 48-14-1, in favor of mercantile corporations, when it is not a mercantile corporation, is not organized under said section of the statutes and, if it were, is not conducting its banking business in a town of less than 1500 population but in a metropolitan city with a population approximately 100 times 1500, or 150,000? Even

if, as counsel for respondent assert, there is legislative sanction for any corporation, other than banking, to conduct a savings bank as one phase of its business, it must be a mercantile corporation and operating in a town of less than 1500 population, a category in which respondent is "neither of none!"

■ Counsel for the respondent seemingly place some reliance on 1953 Comp. § 48-2-15, as giving support to their contentions. This section, prior to amendment in 1955, read as follows:

> *"Conducting banking and other business—Separate capital—Separate accounts.*—All persons, copartnerships and corporations engaged in business, a portion only of which is banking, shall set apart and keep separate so much capital for banking as may be necessary for conducting a bank under section 8 (48-2-14) hereof. The capital so set apart and the assets of said bank or banking department shall be first applicable to the payment of the creditors thereof, as distinguished from the general creditors of the persons, copartnerships or corporations conducting the same. Every person, copartnership and corporation so carrying on a banking business in connection with any other business shall keep separate books of account for each banking business, and shall be governed as to all deposits, reserves, investments and transactions relating to such banking business, by the provisions of this act provided for the control of such banking business, and with respect to said banking business or banking department shall be subject to all of the provisions of this act."

If there be any grant in this section for the formation of a corporation, such as respondent, to conduct a savings bank as a part of its business, or for any other purpose, we are unable to find it. Unquestionably, it reflects a legislative understanding that there is authority in the law for a corporation to exist in which a portion only of its business is banking. See 1953 Comp. § 48-14-1, quoted, supra, authorizing charters for mercantile companies to transact a general banking business in towns of less than 1500 population. Obviously, the statute last quoted refers only to corporations already organized and existing under it

Furthermore, the occasion which brought about the enactment of this statute clearly appears when its background is studied. Prior to enactment of the Banking Act in 1915, it was uncertain whether the mercantile companies doing a banking business as authorized by the 1903 Act, 1953 Comp. § 48-14-1, in towns of less than 1500 population came under the jurisdiction of the Traveling Auditor, a predeces-

sor of State Bank Examiner. The former had in 1912 even gone so far as to request an opinion of the Attorney General touching his authority over such mercantile corporations. See Reports of Attorney General, 1912–1913, p. 15.

So it was that when the Banking Act was passed in 1915, L.1915, c. 67, 1953 Comp. § 48–2–15 was included as a part thereof, thus removing all doubt on the matter by placing the banking department of such corporation in towns of less than 1500 population under the complete supervision of the State Bank Examiner. There is nothing in § 48–2–15 *lending any support whatever* to a claim that a company securing its charter under the general incorporation laws can carry on, as a part of its business, and operate a savings bank.

But, say counsel for respondent, the Attorney General has rendered several opinions sustaining their position. Most of them have to do with the question whether this or that corporation came under the supervision of State Bank Examiner. None, save one or two notable instances to be mentioned, repudiate the idea that there are two kinds of corporation permitted for those intending to do a banking business, namely, (1) those organized under the Banking Act; and (2) those organized under the Mercantile Act, with power to carry on a banking business as one of its departments in cities and towns of less than 1500 population.

Now for the two instances above referred to as exceptions, one being an opinion of the Attorney General, to be found on page 161 of his Reports for 1919–1920. As to this opinion, we can only say we think it is not a correct statement of the law. The opinion expresses the view that 1953 Comp. § 48–2–15, L.1915, c. 67, § 9, repeals or removes the restriction as to population to be found in 1953 Comp. § 48–14–2. It winds up by saying:

"* * * In other words, I am of the opinion that *any corporation is authorized to carry on a banking business in connection with its other business,* provided it complies with the provisions of Chapter 67, Session Laws of 1915, regardless of the population of the village or town where such banking business is operated." (Emphasis ours.)

If there was a repeal, as stated in this opinion of the Attorney General, it was by implication. That there was none of any kind, express or implied, is conclusively established when the legislature reenacted, with certain amendments, the mercantile company sections by L.1929, c. 131, leaving the population provisos just as originally enacted, thus constituting them a mere continuation thereof. State v. Thompson, 37 N.M. 229, 20 P.2d 1030.

The other opinion is one to be found on page 424 of the 1952–1953 Report of the Attorney General's opinions. It falls in-

to the same category as the 1920 opinion just discussed. It cites no authority in its suppport and apparently was content to rest itself on the earlier 1920 opinion and was just as wrong as the earlier one.

■ So much for opinions of the Attorney General's office over the years. We are not bound by them in any event, giving them such weight only as we deem they merit and no more. If we think them right, we follow and approve, and if convinced they are wrong, as in case of the last two mentioned, we reject and decline to feel ourselves bound.

■ We come now to the respondent's second line of defense—a challenge to the State Banking Act on constitutional grounds. The first such challenge is that the provisions of the State Banking Act, L.1915, c. 67, as amended, pertaining to the incorporation of banking corporations, are void and ineffective under provisions of section 16 of Article 4 of the State Constitution, requiring the subject of every bill to be expressed in its title, etc. The title to the act in question, "An Act to Define and Regulate the Business of Banking" is pretty broad and we find no merit in the contentions made by respondent in this behalf. State v. Gomez, 34 N.M. 250, 280 P. 251.

The provisions of sections 6 and 13 of Article XI of the Constitution become the basis of respondent's next challenge to the Banking Act, the gist of the challenge being that the legislature is powerless under these provisions of Art. XI to designate State Bank Examiner, rather than State Corporation Commission, the body to make determinative findings, preliminary to issuing charters to state banks. And, again, in what becomes the last assault on constitutional grounds, the Banking Act, say counsel for respondent, if construed to prohibit it and all others, except banking corporations organized under the provisions of said act, from engaging in the banking business; then, the act, or the portions so construed, deny to respondent due process of law and the equal protection of the law, as guaranteed by Const. Art. 2, § 18.

We have carefully considered these far reaching and portentous assaults on the whole banking structure of the state, extending from its very foundations to its entire superstructure. Since statehood, or well nigh a half century, the legality and basic soundness of the statutes upon which rests the banking business, as it has evolved from a small beginning to its now more than billion dollar status, have been more or less accepted and acquiesced in by those engaged therein, those who leave their earnings and profits there and, as well, those who look to banks for succor and aid when financial reverses come to plague and torment their peace of mind. We should have to be moved by stronger and more persuasive reasons than any here

presented, before pronouncing judgment that would topple a business so vital and well entrenched as the one now assailed. None of the challenges on constitutional grounds are meritorious. All are denied.

 Finally, counsel for the respondent say the state is barred by laches, or in the alternative, is estopped from questioning the status or actions of respondent in the conduct of its banking business. They rely in this position on the opinions of the Attorney General and the claimed effect of L.1955, c. 98. We have already dwelt on the opinions of the Attorney General. The 1955 Act mentioned has no such effect as claimed, having been enacted to close the supposed "loop hole" pointed out in one of the opinions by the Attorney General. Its obvious purpose was to clarify, not change the law. Just how making more difficult and adding further restrictions to the procural of a charter to engage in the banking business, as does the 1955 amendment, can enlarge the means already existing in that behalf is not explained, nor are we able to discern.

Whatever the effect of the opinions mentioned or of the 1955 amendment, in any event, the State can not be estopped from the exercise of its police power.

"A state cannot estop itself by grant or contract from the exercise of the police power." Sanitary Dist. of Chicago v. United States, 266 U.S. 405, 427, 45 S.Ct. 176, 179, 69 L.Ed. 352, 363.

See, also, Town of Gallup v. Constant, 36 N.M. 211, 11 P.2d 962; and, also, State ex rel. Fishback v. Globe Casket & Undertaking Co., 82 Wash. 124, 143 P. 878, L.R.A.1915B, 976. Compare State ex inf. Shartel ex rel. City of Sikeston v. Missouri Utilities Co., 331 Mo. 337, 53 S.W.2d 394, 89 A.L.R. 607; State ex rel. Caldwell v. Lincoln St. R. Co., 80 Neb. 333, 114 N.W. 422, and Annotation at 14 L.R.A.,N.S., 336.

It must not be inferred from anything we have said that the application of 1953 Comp. § 48–14–1, is limited to authorizing *mercantile* companies to conduct as one phase of their business, subject to the conditions named, a general banking business in towns having a population according to the last United States census of less than fifteen hundred (1500) inhabitants. The statute mentioned confers the same authority on companies organized under it for any other "trade and business," as that conferred on mercantile companies.

It follows from what has been said that the judgment reviewed is correct and should be affirmed.

It is so ordered.

COMPTON, C. J., and LUJAN, McGHEE, and KIKER, JJ., concur.