Complainant and defendant own adjoining properties situate on Collins Avenue in Pleasantville, New Jersey. Each property has a 50 feet frontage on Collins Avenue by a depth of approximately 167 feet. *Page 408 
Complainant purchased his property in 1928 from his mother and father, who took title thereto from one Leon L. Collins, the then owner, who testified that he built the dwelling still standing thereon in 1912, at which time the lot to the west, now occupied by defendant, appeared to be farm land, with no buildings thereon erected. Collins further said that from the time of the erection of his dwelling until he erected his garage in 1923, he used about 4 feet of his land on the west and about 7 feet of the adjoining land on the east as and for a driveway for the delivery of coal, wood, c., to a cellar window about 4 feet southwardly from the rear of his dwelling. This use of the driveway by Collins continued during the time Mrs. Reid was erecting her house (about 1914) and it continued to be used by both Collins and Reid for delivery purposes at all times thereafter up to the rear window aforesaid, and that use was not questioned by either party. In 1923 Collins built a garage approximately 39 feet in the rear of his dwelling and he thereafter extended the use of the driveway for the purpose of ingress and egress to his garage. Mrs. Reid never built a garage on her property and consequently her use of the driveway was for delivery purposes to a rear cellar delivery window inserted in the east side of her dwelling.
It is conceded that a right of way exists in favor of both properties for delivery purposes to the extent above indicated,i.e., from the property line northwardly beyond the delivery windows in each house facing the drive for the length necessary to unload deliveries of coal, c., to the delivery windows aforesaid. With this accord the court will not interfere, so that the question is, has complainant a right of way for ingress and egress for automobiles northwardly on the conceded right of way aforesaid, i.e., to the entrance to complainant's garage?
The facts show that if complainant is denied the use of the driveway as it now exists for ingress and egress to his garage, that it will be necessary for him to use that portion of land on the east side of his house, which is now occupied in part by a hedge and lawn, as well as certain steps which give access to a door inserted in the east rear of complainant's property. *Page 409 
It is admitted that complainant does not have a right of way to the extent necessary for use for ingress and egress to his garage as it now stands by reason of adverse user for 20 years or over. This is obvious, since Collins built his garage in 1923.
The theory of the bill of complaint as originally drawn was that the complainant was entitled to a right of way back to his garage by reason of adverse user, but complainant now contends that even though he does not have that right of way, the defendant is estopped from denying complainant the right of user for ingress and egress from the front property line to the garage.
The evidence shows that Collins and defendant lived as friendly neighbors and there is no testimony to show whether or not Collins asked permission of Reid to locate his garage where he did, nor that he asked or was given permission to drive over the so-called right of way from the garage to the street, nor is there any evidence to disclose that Collins used the land over which his auto passed and repassed under the claim of adverse right. Apparently he simply used the right of way and nothing was said about it.
There is no doubt but that when complainant bought from his father and mother (who I understand in fact held title for him) he saw the single garage erected on the lot purchased by him and observed the fact that ingress and egress to and from the garage had been over the disputed right of way, and he also observed that part of that driveway was over the adjoining property.
Complainant does not testify as to any investigation or inquiry as to the nature of the right of user of the right of way, but simply that he used it from the date of his purchase, and I assume he also used it during the ownership of his mother and father. Complainant said he tore down the old garage in 1926, which was then in a dilapidated condition, and erected a double garage at approximately the same location, and continued to use the disputed right of way until stopped by defendant in December of 1940.
Mrs. Reid, the defendant, testified that while Collins occupied the property now owned by complainant she offered no *Page 410 
objection to the use of the right of way, but that after title passed from Collins the right of way was frequently obstructed by standing automobiles, and that this was particularly so after complainant had removed from the property and rented it to others, and this objectionable user, plus a report that complainant intended to remodel his house and use it for apartments, caused her to compel a discontinuance of its use, by the placing of four posts in the ground at various places along her property line.
The asserted estoppel consists in the assertion that Mrs. Reid, in 1926, saw complainant go to the expense of demolishing the old garage and erecting the new one, and that she stood silently by and made no complaint, and thus lead him to expend money in the erection of a new garage which he could have saved had the true facts been disclosed to him, and in addition thereto, that she stood silently by from 1926 to December, 1940, and saw complainant use the driveway; and complainant further says that defendant thus stood silently by, notwithstanding the fact that she knew the driveway was "a necessity" to complainant.
The proofs clearly show that complainant could have used the space on the easterly side of his house for ingress and egress to the garage erected by him in 1926, and that Collins could have done likewise at the time he located his garage in 1923. There is a distance of 9.78 feet from the line of complainant's dwelling to his east property line. This space could have been used at any time before and after the erection of the present garage. True, a change to the easterly side would have necessitated the expenditure of some money on the part of complainant, but even so, the passage over the strip on the west may not be said now to be or ever to have been a way by necessity. It was simply more convenient at the time Collins erected the garage, and complainant has made the easterly side less convenient since his purchase of the property by certain changes he made on that side of his dwelling after its purchase.
The only conduct on the part of defendant upon which, as I view the evidence, complainant could claim an estoppel, is that the defendant did not complain when complainant tore *Page 411 
down the old and erected the new garage, or did not at that time specifically advise complainant that he had no right of way for ingress and egress to his garage, and that by reason of defendant's silence complainant expended money which he would not have expended had he been advised of defendant's claim, as now presented. There is no proof that either party knew of their legal rights in the right of way at, before or after the time complainant purchased the property.
There is no doubt but that defendant knew about the demolition of the old garage and of complainant's intention to rebuild on that location, or that she saw the process of rebuilding. I find no testimony supporting a finding either that defendant expressly consented or dissented to the erection of the new garage, nor do I find any evidence that would justify my finding that complainant agreed to remove the new garage if its location became distasteful to the defendant. Attempts were made by both sides to cover the points above suggested, by alleged conversations between complainant and one Brown. I do find that there was such a conversation and that Brown suggested that complainant rebuild so as to make use of the land on the easterly side of his house for ingress and egress, in fact, complainant practically admits that such was the conversation, but expressly denies that there was any promise on his part to at any time remove the garage from the location upon which he was then erecting it.
We have, then, only the fact that Mrs. Reid stood silently by and allowed complainant to demolish the old garage, erect the new one and make an expenditure of about $250 in so doing, and that she had permitted Collins to use the driveway during his ownership thereof. When Mrs. Reid built her property she saw that the driveway was being used back to the cellar delivery window on complainant's property. She saw Collins use it back to his garage from 1923, but a continuous user from the cellar window to the garage falls far short of 20 years.
It has been held that, standing alone, mere passive consent to the use of a right of way does not ripen into a prescriptive right if the user covers a period of less than 20 years. InCampbell v. Smith, 8 N.J. Law (at p. 152), the court held: *Page 412 
"The submission of the owners of the ancient channel to the diversion of the water, can avail the plaintiff nothing. No instance exists in which the possession of real property with the knowledge and without a murmur of the owner has been held, short of the period of limitation, to destroy his right. The law has yielded him 20 years and told him his right shall for that period retain its full vigor, and may be asserted with equal force in the last hour as in the first. Short of that period, then, a mere submission cannot, by presumption, deprive the owner of his property."
The above rule is subject to the operation of the doctrine of equitable estoppel, and the principle underlying such an estoppel is the maxim "one who is silent when he ought to speak will not be heard to speak when he ought to be silent," and "to give rise to an estoppel by silence or inaction, there must be * * * an obligation or duty" to speak. 19 Amer. Jur. § 55 pp. 663 and664 and at bottom of p. 665:
"Likewise, there is no obligation to disclose matters of which the other party has actual or constructive knowledge or as to which the information or means of acquiring information of the two parties is equal. In general, a person is required to speak only when common honesty and fair dealing demand that he do so, and in order that a party may be estopped by silence, there must be on his part an intent to mislead, or at least a willingness that others should be deceived, together with knowledge or reason to suppose that someone is relying on such silence or inaction and in consequence thereof is acting or is about to act as he would not act otherwise."
It must be remembered that this is not a case of a defendant standing by and seeing complainant expend money in the erection of an improvement on defendant's land and thereby enriching herself by the value of the improvement. The most that is charged by complainant is that defendant stood by and allowed him to make expenditures on his own land. Nor is this a case where defendant knew of complainant's intended purchase of his property in reliance on the existence of an apparent right of way which he saw being used. There is no evidence of defendant's having known of the intended purchase by complainant.
I fail to see any duty or obligation on the part of Mrs. Reid to have gone to the complainant when she saw him *Page 413 
demolish the old garage and start the erection of the new one and advise him that he had no legal right to the use of the driveway. There is no evidence in the case that she knew of her legal right to close the driveway or that after 20 years user she might be barred from so doing. The defendant had no complaint with the manner in which Collins had used the driveway and was content at the time complainant rebuilt that he should continue to use it, and while she had complained as to its user by tenants of complainant, she did not enforce, nor was she compelled to enforce her rights until the expiration of the 20 years, and this she did in 1940, and then only when a threatened further user of the driveway came to her knowledge.
The rights of the respective parties in the driveway were not fixed by the record of conveyances. The true facts with reference to the right of user could only be gleaned from the history of the inception of the use, i.e., whether by permission or adversely, its continuity, c. All of this information was open to complainant had he inquired of his predecessor in title, or from Mrs. Reid. He testified that he relied solely on what he saw on the ground and made no other investigation of any character. The result of his failure to investigate, rather than reliance on Mrs. Reid's silence, puts him in his present position.
In Mutual Life Insurance Co. v. Norris, 31 N.J. Eq. 583 (atp. 585), the court said:
"Where both parties have equal opportunities of knowledge, and they both act in ignorance of the real state of the case, and the complainant's act, which he says was induced by the defendant, appears to be rather the result of his own will or judgment than the consequence of the defendant's act or representation, there can be no estoppel."
See, also, Perkins v. Moorestown and Camden Turnpike Co.,48 N.J. Eq. 499 (at p. 505); 22 Atl. Rep. 180.
"The essential elements of an equitable estoppel as related to the party estopped are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to *Page 414 
assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such character as to change his position prejudicially." 19 Amer. Jur. § 42 pp. 642, 643.
They are more fully set forth in 3 Pom. (5th ed.) § 805
(at p. 191), and in Central Railroad Co. v. MacCartney,68 N.J. Law 165, 175; 52 Atl. Rep. 575; Musconetcong Iron Works v.Delaware, Lackawanna and Western Railroad Co., 78 N.J. Law 717;76 Atl. Rep. 971.
Complainant is entitled to a decree enjoining defendant from interference with the use of the driveway for the purpose of deliveries to the respective delivery windows aforesaid, but not from preventing the use of said way for ingress and egress to his garage. If the parties are unable to agree as to the exact distance north of the delivery windows necessary for delivery purposes, a reference to a master may be made. Costs will not be allowed to either party, inasmuch as both have succeeded in part.