BANK OF DELAWARE, a banking corporation of the State of Delaware, Defendant Appellant, v. UNION WHOLE-SALE COMPANY, a corporation of the State of Delaware, Plaintiff Appellee.

(*August* 4, 1964.)

TERRY, C. J., CAREY, J., and SHORT, V. C. (specially assigned).

*William Prickett, Jr.,* of Prickett & Prickett, for the defendant below, appellant.

*Thomas J. Healy, Jr.,* of Metten, Healy & Collins, for the plaintiff below, appellee.

Supreme Court of the State of Delaware, No. 57, 1963.

SHORT, Vice Chancellor.

This is an appeal from an order of the Superior Court setting aside the verdict of a jury in favor of the defendant and entering judgment for the plaintiff. The facts are fully set forth in the opinion of the court below. See *Union Wholesale Company v. Bank of Delaware,* Del. Super., 190 A.2d 761. We do, however, find that the statement of facts in the trial court's opinion is inaccurate in one important particular, and since that court's ultimate holding was predicated in a material degree upon the erroneous fact stated, we feel impelled to correct the error and consider the case in the light of the facts supported by the record.

Briefly stated, plaintiff below (Union), a bank depositor, brought suit against defendant below (Bank) to recover money paid out on checks forged by an employee of Union. The checks, being six in number, were cashed by the forger in branches of the Bank. They total $7900. Three of the checks were returned to Union with the Bank's monthly statement in September 1958, two with the October 1958 statement and the last with the Novem-

ber 1958 statement.[1] The Bank admitted liability with respect to the first three checks totalling $3900, but contended that as to the remaining three Union's negligence in failing to examine the statements and cancelled checks was the proximate cause of Union's loss. In stating the facts, the court below said:

"It seems further desirable to point out that the Bank, when it opened accounts, always required duplicate signature cards of authorized signatories on checks, one of which cards was kept at the Main Office and the other at the Branch (there were 5 such branches) where the account was opened; that when a check is presented to a bank teller for cashing the teller has the duplicate signature card for verification and it is always available to the Bank's bookkeeping department to verify the signature before depositor's account is charged with payment of the check. It developed that signature cards were not maintained at all branches. The chief teller of the Bank testified that tellers are instructed to be careful about paying checks, in large amounts, and that they could always go to an officer to have a signature on a check verified. It was made to appear that no teller who cashed the forged checks ever verified the signature with the signature cards or consulted an officer for verification of the signatures on these forged checks."

We find from an examination of the record that the procedure followed by the Bank in paying checks and verifying signatures is not accurately stated by the above quotation. That statement tends to indicate that it was the duty of the Bank's tellers to verify signatures on checks, and that for this purpose they had available duplicate signature cards. To the contrary, the record estab-

---

[1]The opinion of the court below incorrectly recites the year as 1962.

lishes that duplicate signature cards were not available at the Bank's branch offices where the checks were cashed, and that the duty of tellers in cashing checks was to be assured only that the check was regular on its face, that sufficient funds were deposited to the account on which it was drawn, and that the payee or last endorser was known or identified. The duty to verify the signature of the maker of a check was that of the bookkeeping department which, after the close of business on each day, checked the signatures of makers before an account was charged with payment. In concluding that the Bank's own testimony established negligence in the payment of the three checks in issue the trial court relied in a substantial degree upon the failure of the tellers to exercise duties which were not cast upon them by the Bank's customary procedure.

The Bank introduced evidence of its custom in paying checks and verifying signatures. It did not, however, offer any testimony as to the manner in which the checks here involved were handled by its bookkeeping department. It did not call the employees whose duty it was to verify signatures on these checks to test their recollection, if any. Neither did they offer any explanation for their failure to call such employees. The Bank relied in the court below, as it does here, on the bare proof of its custom as probative of the fact that the signatures on the checks were verified according to that custom.

The Bank cites a number of cases to the effect that evidence of habit or custom is admissible to prove what was done on a particular occasion. See *Boston Lumber Co. v. Pendleton Brothers, Inc.*, 102 Conn. 626, 129 A. 782; *Ware v. Childs*, 82 Vt. 359, 73 A. 994; *Moffitt v. Connecticut Co*, 86 Conn. 527, 86 A. 16; *Baldridge v. Matthews*, 378 Pa. 566, 106 A.2d 809. We have found no

case in this state which passes upon this question. Assuming such to be the rule in the ordinary case, we are satisfied that it is not applicable in the circumstances here presented. Where a bank pays out money of a depositor otherwise than in conformity with his orders, the bank, at the suit of the depositor, has the burden of establishing its freedom from negligence. *National Dredging Co. v. Farmers' Bank,* 6 Pennewill 580, 69 A. 607, 16 L.R.A., N.S., 593. Until this burden is met by the bank its liability is not discharged. We do not think that the mere proof of the customary method of verifying signatures on checks is sufficient, in and of itself, to justify the conclusion that admittedly forged checks were verified in that manner. Nor do we feel that our view lacks the support of authority. Thus, in *R. H. Kimball, Inc. v. Rhode Island Hospital Nat. Bank,* 72 R.1. 144, 48 A.2d 420, the Supreme Court of Rhode Island in consideration of a similar case said: "There was no evidence that any teller, clerk or officer ever used the plaintiff's signature card by which to verify the signature on any of these forged checks; nor is there specific evidence that any of the * * * checks was actually and individually inspected according to the bank's system."

A case of particular interest in circumstances such as the present is *Basch v. Bank of America Nat. Trust & Savings Ass'n.,* Cal.App., 129 P.2d 742, affirmed 22 Cal. 2d 316, 139 P.2d 1. There, as here, a depositor sued his bank to recover the amount of forged checks charged to his account. The bank, as here, pleaded negligence on the part of the depositor in failing to examine monthly statements and cancelled checks. Evidence was introduced showing the bank's custom in verifying signatures. The teller of the bank's division which was charged with that duty was called as a witness. He was shown certain checks, including several which he himself had previously

honored as genuine. After examining these checks he admitted that several of them bore evidence of forgery and should not have been honored. Though this character of testimony would probably occur infrequently, the case nevertheless illustrates the point that witnesses to a transaction, though without specific recollection of its details may, even at a remote time, cast light upon it. In the present case it is quite conceivable that had the employees of the Bank whose duty it was to verify signatures been called as witnesses, one or more of them may have recalled examining the particular checks involved. They might also, as in the Basch case, after examining the signatures on particular checks, have observed something which would have caused them to question the genuineness of such signatures.

In the case of *England Nat. Bank v. United States*, 5 Cir., 282 F. 121, bank officers, at trial, testified that its custom was to make and mail, upon request, a statement of the depositor's account; that when a statement was made up a date was noted on the bank's records to indicate that it had been sent; that cancelled checks were never returned except in connection with a statement of account; that with respect to the checks involved two clerks were in charge of making the statements and that no one remembered which of them had done so. In these circumstances, fortified by corroborative testimony, the court held that the evidence of the bank's custom and usage was admissible to show that statements of account were made up and, together with cancelled checks, were received by the depositor at about the date of the notation on the bank's records. It is apparent that neither of the clerks who were charged with the duty of making statements was called as a witness. There was, however, testimony that no one remembered which of the clerks had performed this duty. Moreover, there was corroborating

testimony to the effect that the checks involved were in fact in the hands of the depositor at about the time noted on the bank's records.

In this case, the trial court did point out that the Bank "did not present substantiation of the evidence as was given by Mr. Pruitt [a bank officer]—whose testimony went no further than to outline proper banking practices to be followed by the Bank—without some substantiation that such banking practices were carried out and made effective by bank personnel handling the cashing of checks." However, as already observed, this was not the principle ground relied upon by the trial court.

We are of the opinion that in a case of this kind, where the burden of proof is upon the bank to establish its own freedom from negligence, in order to meet that burden it is incumbent on the bank to submit evidence that its customary practices were carried out in the specific instance. If, for any valid reason, it is unable to adduce such evidence, that fact should be made to affirmatively appear before evidence of custom can be accepted as probative of the fact that the practice was followed on the given occasion, assuming the propriety of the rule announced in the Boston Lumber Co., Ware, Moffit and Baldridge cases, supra.

Here, the Bank neither submitted evidence that its custom was followed with respect to the checks involved, nor offered an explanation for its failure to do so. We are, therefore, satisfied that the mere proof of the Bank's custom was insufficient to warrant the jury in finding that the Bank had followed that custom in the present instance, a finding inherent in the verdict which they rendered. The action taken by the trial court was therefore proper.

The Bank suggests that we review the law as announ-

ced in *National Dredging Co. v. Farmers Bank,* supra, to provide for greater protection to the Bank in keeping with modern practices. We find that the principles laid down in that case are in accord with the great weight of authority, both state and federal. Accordingly, we decline to review it.

The judgment appealed from is affirmed.