273 N.J. Super. 388 (1993)
641 A.2d 1136
GLOBE MOTOR CAR COMPANY, PLAINTIFF,
v.
FIRST FIDELITY BANK, N.A., NEW JERSEY, JOHN W. GALLO, PETRICS, MESKIN & NASSAUR, EQUIFAX, PHIL L/N/U, SAHRON GALLO, W. KARMAN, JIMMY HAWKINS, JIMMY YAR, WALTER HARYE, SCOTT GALLO, TURK JORDAN, DEFENDANT.
Superior Court of New Jersey, Law Division Essex County.
Decided December 3, 1993.
*390 Anthony J. Fusco, Jr., for plaintiff.
*391 Dennis T. Kearney, for defendant First Fidelity (Pitney, Hardin, Kipp & Szuch, attorneys).
John Peter Duggan, for defendant Petrics, Meskin & Nassaur (Wolf, Helies & Duggan, attorneys).
Thomas J. Biamonte, for defendant John W. Gallo (Giblin & Giblin, attorneys).
Robert J. Kelly, for defendant Equifax Co. (McElroy, Deutsch & Mulvaney, attorneys).
JULIO M. FUENTES, J.S.C.
This summary judgment motion concerns the liability of a bank to its depositor with respect to approximately $1.5 million embezzled by the depositor's employee. The entire sum was stolen by the employee, a compulsive gambler.
The facts are largely not disputed. Plaintiff, Globe Motor Car Company (Globe), is an automobile dealership located in Fairfield, New Jersey. Its day-to-day finances were mainly handled by the office manager, John Gallo. During the relevant period of Gallo's employment, Globe was under an agreement with defendant First Fidelity Bank, N.A. (First Fidelity), which called for the bank to make loans to Globe to permit Globe to acquire new and used motor vehicles for sale or lease. Each extension of credit was to be secured by an interest in the vehicles acquired with the proceeds advanced by the bank. Upon the sale of any secured vehicle, Globe was obligated to pay off the financing loans. According to the agreement, First Fidelity or its designee was permitted to inspect Globe's records and the vehicles "at such time as the Bank may elect." On occasion, First Fidelity designated defendant Equifax, Inc., to inspect Globe's inventory.
From 1987 to 1990, Gallo embezzled over $1.5 million dollars from his employer. He acted alone in a fairly uncomplicated fraudulent scheme. On many occasions, Gallo would simply retain vehicle purchase money for his own use instead of depositing the proceeds to pay off the bank loans. On other occasions, Gallo *392 would make himself and others payees on checks signed in blank by the owner. As the embezzlement progressed, Gallo would forge the owner's signature to checks payable to himself and others. To conceal his activities, Gallo removed checks made out to him from the monthly checking account statement. He also made out fake certificates of deposit and falsified monthly bank reconciliations.
Throughout the period of Gallo's deception, routine inspections by plaintiff's accountants, defendant Petrics, Meskin & Nassaur, failed to reveal any discrepancy. The accountants apparently reviewed only Gallo's falsified bank reconciliation and the top sheet of the bank statement showing the month-end account balance. The accountants never audited Gallo's bank reconciliation and, until he was finally caught, no one reviewed any of his forged cancelled checks, nor did anyone verify any of his forged deposit tickets. On site vehicle inspections by First Fidelity and Equifax failed to reveal any reason for alarm. When vehicle counts did not coincide with bank or dealer records, Gallo gave the inspectors assorted explanations for the discrepancies. When questioned about a vehicle's absence, Gallo often responded that the vehicle was out on lease, already paid to the bank, or sold or traded subject to payment. Gallo's embezzlement was finally brought to light in May 1990, when defendant First Fidelity informed Globe that it was out of trust.
In its complaint, Globe contends that its accountants, Petrics, Meskin & Nassaur, the bank, First Fidelity, and the vehicle counter, Equifax, were all negligent in failing to detect or prevent Gallo's criminal spree. First Fidelity and Equifax move for summary judgment contending that they owed no duty to Globe for its employee's embezzlement. Globe alleges that First Fidelity "owed a duty to Globe to exercise their control over the affairs of Globe," and that First Fidelity breached that duty by "failing to manage, supervise, control and monitor Globe" in its business and financial practices. In essence, Globe claims that the bank violated a fiduciary relationship with the dealership. As to Equifax, *393 Globe claims that it was negligent in its duty to inspect the vehicles, and that if it had properly performed its duty it would have detected a discrepancy between Globe's inventory and its bank loan commitments.

I. NEGLIGENCE AS TO FIRST FIDELITY AND EQUIFAX

Generally, to establish a negligence claim there must be a finding that the defendant owed some duty to the party complaining and a breach of that duty. Kelly v. Gwinnell, 96 N.J. 538, 544, 476 A.2d 1219 (1984); Goldberg v. Housing Authority of Newark, 38 N.J. 578, 583, 186 A.2d 291 (1962); Brody v. Albert Lifson & Sons, 17 N.J. 383, 389, 111 A.2d 504 (1955). "The question of whether a duty exists is a matter of law properly decided by the court, not the jury, and is largely a question of fairness or policy." Wang v. Allstate Ins. Co., 125 N.J. 2, 15, 592 A.2d 527 (1991); Strachan v. John F. Kennedy Memorial Hosp., 109 N.J. 523, 529, 538 A.2d 346 (1988). The inquiry as to whether a duty exists involves a weighing of the relationship of the parties, the nature of the risk and the public interest to be served. Kelly v. Gwinnell, supra, 96 N.J. at 544, 476 A.2d 1219; Goldberg v. Housing Auth. of Newark supra, 38 N.J. at 583, 186 A.2d 291.
Globe's claim that the bank owes it a duty because of a presumed fiduciary relationship is without merit and unsupported by any state or federal law. On the contrary, "creditor-debtor relationships ... rarely are found to give rise to a fiduciary duty." Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47, 53 (3d Cir.1988) (citing Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, 731 F.2d 112, 122 (2d Cir.1984)). As the Paradise Hotel court further noted, it "would be anomalous to require a lender to act as a fiduciary for interests on the opposite sides of the negotiating table," inasmuch as their respective positions are essentially adversarial. 842 F.2d at 53 (quoting Weinberger v. Kendrick, 698 F.2d 61 (2d Cir.1982), cert. denied, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983)); see also Gross v. Grimaldi, 64 N.J. Super. 457, 462, 166 A.2d 592 (App.Div. 1960) (court distinguished *394 fiduciary attorney-client relationship from relationship "simply that of debtor-creditor"); Klemm v. Labor Cooperative Nat'l Bank, 117 N.J.L. 284, 287, 187 A. 640 (E. & A. 1936) (relation of debtor-creditor arising between bank and depositor from general deposit is not fiduciary absent specific establishment of trust).
The agreement between Globe and First Fidelity which governs this matter calls for Globe to keep accurate and complete records of all vehicles in which the bank has an interest. Globe is also to notify First Fidelity promptly of the details of all sales of vehicles, to receive and hold all proceeds of the sale of vehicles as trustee for First Fidelity, and to permit First Fidelity or its designee to inspect and check the vehicles at First Fidelity's election. All of these obligations on the part of Globe were included to protect First Fidelity's security interest in the goods. Nothing in the agreement obligates or even permits the bank to manage, control or monitor Globe's day-to-day business.
Imposing such a duty on a depositor bank would be unreasonable and untenable. Indeed, it would be foolhardy to expect a bank to supervise its depositor's employees, manage its financial planning and oversee its business activities. Moreover, I cannot imagine a depositor wanting a lender bank to be so intimately involved in its financial and private business judgments. Thus, imposing a duty on a bank that would obligate it to be responsible for its depositor's financial affairs would be impractical as a matter of public policy. As one California court stated, "[p]ublic policy does not impose upon the Bank absolute liability for the hardships which may befall the business venture it finances." Wagner v. Benson, 101 Cal. App.3d 27, 34, 161 Cal. Rptr. 516 (Ct.App. 1980).
In considering the relationship of the parties and the nature of risks involved, there is no question that depositors such as Globe are better suited than their lending bank to manage their own affairs, hire and supervise their own employees, keep their own records, hire their own auditors and detect and deal with corporate theft. The bank's monthly reports to its creditor permits the depositor to determine if any deposits are missing or if checks are *395 drawn without authority. A prompt examination of those records should have disclosed to the Globe firm that its office manager was a thief. In fact, even if the bank was aware of Gallo's defalcation, the bank had no duty "to disclose matters of which the other party has actual or constructive knowledge or as to which the information or means of acquiring information of the two parties is equal." Weiland v. Turkelson, 38 N.J. Super. 239, 246, 118 A.2d 689 (App.Div. 1955) (quoting Sanders v. Reid, 131 N.J. Eq. 407, 411, 25 A.2d 541 (Ch.Div. 1942). Banks cannot be expected to be their borrowers' financial guarantors. Here, Globe's attempt to assign liability to First Fidelity for its failure to police Globe's faithless employee is like the farmer, who upon appointing the fox to guard the henhouse, finds fault with the rooster for the subsequent slaughter. In both instances, blame is misplaced.
Absent a contractual duty, a bank has no obligation to manage, supervise, control or monitor the financial activity of its debtor-depositor and is not liable to its depositor in negligence for failing to uncover a major theft.
As to defendant Equifax, Globe asserts that it was negligent in counting the bank's vehicles on Globe's premises. Equifax asserts that: 1) it owed no duty to Globe to detect Gallo's embezzlement; 2) it had no contract with Globe and provided no information to Globe upon which Globe relied; and 3) Globe did not even know whether the car checkers were employed by Equifax when the car checks were being conducted.
Equifax is a business which provides the service of inspecting vehicles and other collateral for banks and other lenders. In this case, Equifax was designated by First Fidelity to count cars at the Globe dealership. Any claim against Equifax must spring from negligent misrepresentation in connection with rendering such services. Under New Jersey law, recovery of economic loss due to negligent misrepresentation by one furnishing a service has long been permitted when there exists a direct contractual relationship between the parties. Rosenblum v. Adler, 93 N.J. 324, 461 A.2d 138 (1983); Pabon v. Hackensack Auto Sales Inc., 63 *396 N.J. Super. 476, 498, 164 A.2d 773 (App.Div. 1960). Here, there clearly was no direct contractual relationship between Globe and Equifax.
In Rosenblum v. Adler, supra, the New Jersey Supreme Court considered the circumstances under which the provider of a service may be considered to owe a duty to parties not in privity of contract. The court held that a service provider could be held liable for negligence to one not in privity of contract in the following instances: 1) plaintiff was a foreseeable user of a defendant's report; 2) plaintiff actually received the statement from the company for whom it was prepared pursuant to a proper purpose of that company; 3) plaintiff relied on the statement; and 4) misstatements in such report were due to the auditor's negligence and a proximate cause of plaintiff's loss. Id. at 348-50, 461 A.2d 138. Although the Rosenblum case dealt with a negligence claim against an accounting firm, the standard set forth for imposing liability on a service provider in that decision is equally applicable to Equifax's circumstances.
Clearly Globe's negligence claim against Equifax does not fall within the limited exception to the privity requirement set forth in Rosenblum. Globe was not a present or foreseeable user of Equifax's reports. Further, Globe principals admitted in deposition testimony that they had never seen any of Equifax's reports, much less relied on them. Moreover, Globe's principals testified that they had no knowledge that Equifax had been retained by First Fidelity. Accordingly, there is no material issue of fact as to Globe's claim of negligence against Equifax.

II. CLAIMS AGAINST THE BANK FOR PAYING FORGED OR ALTERED CHECKS

The more difficult issue presented concerns plaintiff's claim that First Fidelity Bank is liable for honoring Gallo's forged or altered checks. Gallo frequently committed the fraud by filling in checks signed in blank by one of plaintiff's officers. Other times, Gallo would forge the signatures and fill in the rest of the check. *397 Ordinarily a bank cannot charge a forged check to the depositor's account but rather it must pay out of its own fund. See N.J.S.A. 12A:3-404; 12A:3-407; Columbian Peanut Co. v. Frosteg, 472 F.2d 476 (5th Cir.), reh. denied, 474 F.2d 1347, cert. denied, 414 U.S. 824, 94 S.Ct. 126, 38 L.Ed.2d 57 (1973). However, the bank is relieved from liability where its payment of the forged check is caused by the negligence of its depositor and where the bank is free from negligence. See, e.g., Brighton, Inc. v. Colonial First Nat'l Bank, 176 N.J. Super. 101, 422 A.2d 433 (App.Div. 1980), aff'd, 86 N.J. 259, 430 A.2d 902 (1981); Clarke v. Camden Trust Co., 84 N.J. Super. 304, 201 A.2d 762 (Law.Div. 1964); Airco Supply Co. v. Albuquerque Nat'l Bank, 68 N.M. 195, 360 P.2d 386 (N.M. 1961).
The law as to who absorbs the loss in an embezzlement scheme involving a bank and its depositor is well-settled and logically sound. Where a check is signed in blank by the maker and is given to a dishonest employee who fills it in, the loss normally falls upon the depositor, not the bank. Under such circumstances, the signature is deemed to be genuine and the check bears no evidence on its face that payment was not intended. N.J.S.A. 12A:3-407; see also Weiner v. Pennsylvania Co. For Insurances On Lives and Granting Annuities, 160 Pa.Super. 320, 51 A.2d 385 (Pa. Super. Ct. 1947). Cf. Joseph Heimberg, Inc. v. Lincoln Nat. Bank, 113 N.J.L. 76, 172 A. 528 (1934) (bank found negligent where check is signed in blank, then stolen, filled in and cashed by a thief). In this case, as between the bank and the depositor, the loss should be borne by the one whose act enabled the wrongdoer to commit the fraud. See Brighton, Inc. v. Colonial First Nat'l Bank, 176 N.J. Super. 101, 422 A.2d 433 (App.Div. 1980), aff'd, 86 N.J. 259, 430 A.2d 902 (1981); Kienberger v. Lally, 130 Pa.Super. 583, 198 A. 453, 456 (Pa. Super. Ct. 1938).
Generally, a very high degree of care should be exercised by the drawer of a negotiable instrument to safeguard it from every reasonable likelihood of alteration. Savings Bank of Richmond v. Nat. Bank of Goldsboro, 3 F.2d 970 (4th Cir.1925); Western Un. Tel. Co. v. Peoples Nat. Bk. Lakewood, 169 N.J. Super. *398 272, 404 A.2d 1178 (App.Div. 1979); Westport Bank & Trust Co. v. Lodge, 164 Conn. 604, 325 A.2d 222 (Conn. 1973). The depositor has a duty to promptly examine and compare the returned checks with the record of payments made. The discharge of that duty should promptly dispel alterations or discrepancies and prevent the successful commission of continuous frauds by exposing the first irregularity. N.J.S.A. 12A:4-406; Western Un. Tel. Co. v. Peoples Nat. Bank of Lakewood, supra, 169 N.J. Super. at 272, 404 A.2d 1178; Rainbow Inn, Inc. v. Clayton Nat. Bank, 86 N.J. Super. 13, 205 A.2d 753 (App.Div. 1965); Forbes v. First Camden Nat. Bank & Trust Co., 25 N.J. Super. 17, 23, 95 A.2d 416 (App.Div. 1953); Faber v. Edgewater Nat. Bank of Edgewater, NJ, 101 N.J. Super. 354, 244 A.2d 339 (Law Div. 1968).
As one New Jersey court recognized:
[A] clerk is not the agent of his principal in the commission of a forgery, and his knowledge cannot be imputed to the principal, but, after forged checks have been paid and returned to the depositor as vouchers, along with his account written up and balanced according to usual business methods, if the depositor assigns the duty of examining such vouchers and account to the same clerk, who has had an opportunity of committing a fraud and has done so, then such clerk, in the discharge of his duty, is the agent of the depositor, and the latter is chargeable with his agent's knowledge of the fraud.
[Rainbow Inn, Inc. v. Clayton Nat'l Bank, supra, 86 N.J. Super. at 24-25, 205 A.2d 753 (citing Pannonia B. & L. Asso. v. West Side Trust Co., 93 N.J.L. 377, 384, 108 A. 240 (E. & A. 1919)) (quoting First Nat'l Bank of Richmond v. Richmond Electric Co., 106 Va. 347, 56 S.E. 152, 154 (Va. Ct. App. 1907))].
See also Screenland Magazine v. National City Bank, 181 Misc. 454, 42 N.Y.S.2d 286, 289 (N.Y. Sup. Ct. 1943) ("a depositor must be held chargeable with knowledge of all the facts that a reasonable and prudent examination of the returned bank statements, vouchers and certificates would have disclosed had it been made by a person on the depositor's behalf who had not participated in the forgeries").
Here since Globe gave Gallo checks signed in blank with no entry as to payee or amount, plaintiff bears the loss. As observed in Comment 4 to N.J.S.A. 12A:3-407, "where blanks are filled or an incomplete instrument is otherwise completed, this *399 section ... [places] the loss upon the party who left the instrument incomplete...." And, contrary to the holding in the Joseph Heimberg case, supra, "this result is intended even though the instrument was stolen from the maker or drawer and completed after the theft." Comment 4 to N.J.S.A. 12A:3-407.
As to the forgeries, a number of decisions have addressed the question of a bank's liability in case of forgery by the depositor's employee. In some states where the employer has entrusted the examination of his account to the dishonest employee who is in a position to conceal the fraud, the bank is nevertheless held liable. Bank of Del. v. Union Wholesale Grocery Co., 57 Del. 531, 203 A.2d 109 (Del. 1964); First Nat'l Bank of McAlester v. Mann, 410 P.2d 74 (Okla. 1966); First Nat'l Bank v. Blewett, 89 S.W.2d 487 (Tex.Civ.App. 1935); see generally, Bailey & Hagedorn, Brady on Bank Checks: The Law of Bank Checks, § 32.6 (7th ed. 1992). Others, including New Jersey, have held that the employer of a dishonest employee is liable even if that very employee is entrusted with examining the accounts. Brighton, Inc. v. Colonial First Nat'l Bank, supra, 176 N.J. Super. at 101, 422 A.2d 433; Rainbow Inn, Inc. v. Clayton Nat'l Bank, supra, 86 N.J. Super. at 13, 205 A.2d 753; Clarke v. Camden Trust Co., supra, 84 N.J. Super. at 304, 201 A.2d 762.
In Brighton, Inc. v. Colonial First Nat'l Bank, supra, real estate management firms brought an action against several banks seeking a determination of the banks' liabilities as to checks drawn by a so-called "faithless employee" who embezzled well over $300,000 from the firms over a five-year period. Like Gallo, the employee in Brighton had authority to draw checks on his employers' bank accounts. 176 N.J. Super. at 106, 422 A.2d 433. Likewise, just as Gallo would forge the signature of a corporate officer, the Brighton employee in many instances forged the name of a principal whose name was required on a company check as drawer.
In absolving the bank of liability, the Appellate Division cited U.C.C. § 3-405(1)(b), which provides in pertinent part: "[a]n *400 indorsement by any person in the name of a named payee is effective if ... a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument...." Id. at 112, 422 A.2d 433. In interpreting the statute as ascribing the loss from the activities of a "faithless employee" to the employer rather than the bank, the court held:
The principle followed is that the loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder or drawer. The reasons are that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance; and that the cost of such insurance is properly an expense of his business rather than of the business of the holder or drawee.
[Ibid. (quoting U.C.C. § 3-405, Comment 4; also citing New Jersey Study Comment 1 to § 3-405).]
Ultimately, fault must lie with the employer, the person or persons who presumably carried out the necessary background checks and maintained the most significant day-to-day contact with the dishonest employee. The employer that hires a thief must suffer the consequences of his or her misjudgment. As the Brighton court surmised:
[Section] 3-405 can be regarded as codifying the proposition that a faithless employee prospers from his employer's negligence, and such an employee's signature will be held effective against the employer. The provision has been recognized as a banker's provision intended to narrow the liability of banks and broaden the customer's responsibility.
[Id. at 117-18, 422 A.2d 433 (citing James J. White and Robert S. Summers, Uniform Commercial Code § 16-8 at 541, 549 (1972)).]
Although the New Jersey Supreme Court summarily affirmed the Brighton appellate decision, Justice Handler, in a separate opinion, concurred with the propositions contained in N.J.S.A. 12A:3-405 and 12A:3-406 in maintaining that "at bottom these provisions encapsulate a principle that the party most responsible for a resultant loss should be held liable." 86 N.J. 259, 261, 430 A.2d 902 (1981). As Justice Handler further opined:
The literal mandate of the Code in normal commercial transactions, even those negligently executed, is for the loss due to an indorsement forged by a faithless employee to fall upon the party who most frequently dealt with the forger and was best able to prevent the forgery  the employee's employer ... although a bank's *401 negligence is normally sufficient to provide for bank liability, the Code provision which establishes that principle is not applicable to this faithless employee-forged indorsement situation.
[Id. at 262, 430 A.2d 902.]
See also Rainbow Inn, Inc. v. Clayton National Bank, supra, 86 N.J. Super. at 26, 205 A.2d 753 ("[t]he depositor is not excused from the discharge of that duty [to examine the account with reasonable care] by entrusting its performance to an incompetent or dishonest agent, in the absence of at least reasonable diligence in supervising the conduct of the authorized agent").
One further issue on this subject concerns whether Globe Motors gave timely notice to First Fidelity of the forged checks. N.J.S.A. 12A:4-406(4) provides that regardless of whether a bank is careless, a depositor "who does not within one year from the time the statement and items are made available to the customer ... discover and report his unauthorized signature or any alteration ... is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration." No review of the bank statements and returned checks was apparently made by plaintiff in this case and the record does not show that any unauthorized signature was presented to the bank. Thus, under this section plaintiff is now estopped from asserting liability against the Bank for any forged or altered check. N.J.S.A. 12A:4-406(2) & (4); Western Un. Tel. Co. v. Peoples Nat. Bk. Lakewood, supra, 169 N.J. Super. at 272, 404 A.2d 1178.
Here, Globe Motors was in the best position to prevent the thefts and is ultimately responsible for the embezzlements. Gallo's successful series of forgeries over a three-year period is more fairly attributable to the folly and carelessness of the plaintiff in failing to detect the forgeries when the cancelled checks were returned to it than to the bank for paying the checks. It is enough to say to plaintiff's claims that its own negligence contributed to the loss.

*402 III. CONCLUSION

There being no material issue of fact remaining as to defendants First Fidelity and Equifax, the claims and/or cross-claims against them are dismissed.