NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1028-15T1

KATHLEEN WOLENS,

    Plaintiff-Appellant,

v.

MORGAN STANLEY SMITH BARNEY, LLC
and WILLIAM GIBSON,

    Defendants-Respondents.

_____

APPROVED FOR PUBLICATION

February 21, 2017

APPELLATE DIVISION

Telephonically argued February 8, 2017 —
Decided February 21, 2017

Before Judges Sabatino, Nugent and Currier.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No.
L-6244-13.

Paul V. Fernicola argued the cause for
appellant (Paul V. Fernicola & Associates,
LLC, attorneys; Mr. Fernicola, of counsel
and on the brief).

Nikolas S. Komyati argued the cause for
respondents (Bressler, Amery & Ross,
attorneys; Mr. Komyati and Boris Peyzner, on
the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

    Plaintiff Kathleen Wolens appeals the trial court's October

9, 2015 order granting summary judgment and dismissing her

complaint against her deceased mother's former investment company, Morgan Stanley Smith Barney ("Morgan Stanley"), and its account manager, co-defendant William Gibson. The essence of plaintiff's claims is that defendants acted negligently and improperly in carrying out a written request to have the mother's investments changed from accounts solely in her name to joint accounts with one of plaintiff's sisters. We affirm because it has not been shown that defendants owed or breached any legal duties to plaintiff, as she was neither their customer nor a person known to them with whom they had any established contractual or special relationship.

I.

Although the focus of our analysis necessarily centers on pivotal legal issues of alleged duty, we briefly note the following pertinent facts, allegations and procedural history. We consider the factual record in a light most favorable to plaintiff, who was the non-moving party on the summary judgment motion. R. 4:46-2; Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also W.J.A. v. D.A., 210 N.J. 229, 237-38 (2012) (applying de novo on appeal the same summary judgment standards).

Plaintiff's present lawsuit is essentially a follow-up to previous litigation she brought concerning the estate of her

mother, Patricia Hardy Johnson. Plaintiff has two sisters, Deirdre Mistri and Carol Alexander. Their mother maintained several investment accounts with Citibank that were managed by Morgan Stanley. Gibson was the individual manager on those accounts.

On February 8, 2008, Gibson received a one-page typewritten letter signed by "Patricia Johnson" and dated February 3, 2008. The letter read as follows: "Please take my individual accounts [account numbers omitted], and make them a joint [sic] with my daughter Deirdre I. Mistri[.] Thank you."

Defendants thereafter converted Johnson's two Citibank accounts, as requested, to joint accounts with Johnson and Mistri. As a joint account holder with her mother, Mistri consequently obtained a right of survivorship in the funds if her mother predeceased her.

Johnson died a few months later in May 2008. Because of the account change, the Citibank investments were treated as non-probate assets and were transferred to Mistri. Plaintiff contested the transfer, arguing that Johnson had been the subject of undue influence by Mistri.

Plaintiff consequently sued both Mistri and Alexander in a probate action in the Chancery Division (Docket ESX-CP-0013-2011). After discovery, defendants in the probate case moved

for summary judgment. The Chancery Judge, Hon. Walter Koprowski, Jr., issued a lengthy written opinion on June 25, 2012 granting summary judgment on certain issues and denying summary judgment on other issues. Subsequently, that litigation settled, with plaintiff receiving approximately $450,000 from Mistri, Alexander, or both.[1]

Plaintiff then filed the present lawsuit in the Law Division against both Morgan Stanley and Gibson, claiming that these defendants owed a duty to her even though she was not a customer of the financial institution. She alleges that defendants acted negligently in allowing the account to be changed without adhering to the protocol prescribed by Morgan Stanley's internal policies and procedures.

Plaintiff rested her contentions of negligence and breach of alleged duty upon testimony Gibson provided at his deposition. Gibson testified that, in general, he monitored Johnson's investment positions, recommended investments for her when appropriate, transferred funds between her bank and her investment accounts, and answered any questions that she might raise about securities. He acknowledged that he received the

---

[1] The record does not disclose the portions respectively contributed to the settlement by the sisters.

February 3, 2008 letter requesting the change in Johnson's accounts and took steps to carry out that request.

As described by Gibson, Morgan Stanley's usual protocol is that when a customer asks to create a joint account, typically the firm "contact[s] the parties to get additional information" if it is needed. The firm then obtains the signatures of both parties on a new accounts agreement, which the parties send back to Morgan Stanley. Gibson did not have a "specific recollection" as of the time of his 2011 deposition whether he had seen such a new accounts form signed by Johnson and Mistri, nor did he know where such a form, if it existed, was presently kept.

Gibson further explained Morgan Stanley's internal process for opening joint accounts, stating that the firm "required" a letter of authorization and personal and financial information from the new party. Gibson did have a "specific recollection" that Morgan Stanley obtained personal and financial information from Mistri. He also testified that, had the firm not obtained Mistri's driver's license when changing the accounts, "the account [change] would have been blocked by [the company's] compliance [unit]."

Gibson initially noted that he had telephone communications with Johnson when she added Mistri to the accounts, but admitted

that he did not maintain any notes from those conversations. He later acknowledged that he lacked a "specific recollection" of such a conversation. However, he did attest that he had explained to Johnson what "right of survivorship" meant, although he could not recall exactly what he said to her. Gibson acknowledged that if Morgan Stanley had received only the February 2008 letter from Johnson, a change in the accounts to joint accounts with rights of survivorship would not have complied with the firm's internal requirements.

In her Law Division complaint, plaintiff focused upon the two accounts, totaling $847,162 in value, which represented the bulk of her mother's estate. She alleged that those accounts had been improperly converted to joint accounts with Mistri based solely on the February 2008 letter addressed to Gibson. Plaintiff claimed that the authenticity of that letter was questionable. She also noted that the letter did not explicitly state that a right of survivorship would be conveyed to Mistri.

Plaintiff alleged that both Morgan Stanley and Gibson were thereby negligent in their handling of the matter and negligently misrepresented the accounts to her, thereby "depriv[ing] [her] of the income from those accounts and the use thereof since Johnson's death, when a portion of the [a]ccounts rightfully became hers upon the Probate of Mrs. Johnson's Last

A-1028-15T1

Will and Testament." Plaintiff demanded compensatory and punitive damages, plus attorneys fees and costs.

Plaintiff has not provided an expert report from a financial expert supporting her allegations of negligence and breach of duty. In addition, she has not identified any federal or state statute, regulation, or other codified provision, nor any written industry guideline, that was breached. Instead, her contentions rest entirely upon asserted deviations from Morgan Stanley's own internal policies and procedures, which, viewing the record in a light most favorable to plaintiff, Gibson acknowledged to some extent at his deposition.

In granting summary judgment to defendants, the trial court determined that plaintiff had not established a viable legal basis for her claims. The motion judge, Hon. Garry J. Furnari, noted in his oral opinion that "it is clear or appears to be clear that . . . no agreement[,] undertaking[,] or even contract . . . existed between [plaintiff] and the defendants. [Plaintiff] admits that she never even spoke with the defendants." The judge additionally found that plaintiff's argument that "Morgan Stanley owed her a duty merely because she stood to inherit under the decedent's will" was "untenable" under applicable case law. In this regard, the judge cited to Pennsylvania National Turf Club, Inc. v. Bank of West Jersey,

158 <u>N.J. Super.</u> 196 (App. Div. 1978) and <u>Globe Motor Car Co. v. First Fidelity Bank, N.A.</u>, 273 <u>N.J. Super.</u> 388 (App. Div. 1993), which rejected imposing a legal duty upon a financial institution to a non-customer unless "special circumstances" justify imposing such a duty on the company. The judge also observed that "a defendant's internal policy standing alone cannot demonstrate the applicable standard of care."

In addition, Judge Furnari determined that plaintiff could not establish the legal requirement of proximate cause for her alleged damages. As the judge observed, "[p]resumably, the [alleged] undue influence exerted by [Mistri] would have been just as effective to persuade her mother to sign a new account agreement as it was to have her sign the letter [to Gibson]." The judge therefore reasoned that, regardless of whether or not Morgan Stanley adhered to its internal policies, "the accounts would have been changed, the probate litigation would have followed."

The judge also dismissed plaintiff's claims of negligent misrepresentation, noting that she had not addressed that claim in her summary judgment brief, and, moreover, there was no proof of such misrepresentation in the record. Lastly, the judge rejected plaintiff's contention that defendants had failed to comply with discovery requests, observing that the discovery end

date had been extended several times and that plaintiff had not timely moved for sanctions or other relief when defendants did not supply the discovery she wanted.

## II.

On appeal, plaintiff contends that (1) the trial court erred in dismissing her claims against both Morgan Stanley and Gibson as a matter of law, (2) the case was not ripe for summary judgment, and (3) defendants' conduct in processing the account changes should make them liable to her for damages. We reject these arguments, substantially for the sound reasons articulated in Judge Furnari's bench opinion. We add several comments by way of amplification.

As a general proposition, the case law in our state has not recognized that a financial institution owes a legal duty to injured third parties who are not their customers unless a statute, regulation or other codified provision imposed such a duty, or where a contractual or "special relationship" has been established between the non-customer third party and the financial institution.

This principle was illustrated long ago by this court in Pennsylvania National Turf Club, a case which has not been overruled or questioned. In that case, the Club, which operated a racetrack, provided a check cashing service for its owners and

9

trainers. Supra, 158 N.J. Super. at 199. Zeek, a trainer at the club, used this check cashing service. Ibid. However, he established with his own bank, the Bank of West Jersey, an "unusual" way of covering checks written to the Club. Id. at 200. Specifically, Zeek would send funds to cover any overdraft from the previous day's checks. Id. at 199. When Zeek did not cover several of his checks cashed by the Club in accordance with this arrangement, the defendant Bank returned twenty-nine of those checks to the Federal Reserve Bank. Id. at 200. Twenty of those checks were returned after the so-called "midnight dishonor" deadline specified in the Uniform Commercial Code ("UCC") codified at N.J.S.A. 12A:4-301 and 12A:4-302 (imposing duties upon payor banks to be "accountable" for not returning checks before "midnight of the banking day of receipt"). Id. at 201. By contrast, the remaining nine checks were returned by the Bank before the statutory midnight deadline. Ibid. Zeek, meanwhile, fled to a Caribbean island. Ibid.

Under these circumstances, the defendant Bank in Pennsylvania National Turf Club did not oppose the entry of summary judgment in the plaintiff's favor for the balance due on the twenty checks that had been returned after the midnight deadline had expired. Ibid. However, the Bank denied liability

for the nine checks that were timely returned in compliance with the statutory deadline. Ibid. The plaintiff countered that the Bank had a legal duty to pay the plaintiff for losses stemming from these nine additional checks, and that the Bank's alleged "mismanagement" of the overall arrangements with Zeek justified the recognition of such a duty. Id. at 202. We disagreed.

In our analysis in Pennsylvania National Turf Club, we recognized that even where a financial institution, such as a bank, has complied with a statutory obligation, such as the UCC, "such compliance does not necessarily immunize it from ordinary tort liability." Id. at 203. "However, a fundamental requisite for tort liability is the existence of a duty owing from defendant to plaintiff." Ibid. (internal citations omitted). As Judge Larner explained, such a duty does not arise in the absence of a contract or "special" circumstances, which were not present in that case:

> In the context of the record facts herein, the bank owed no general duty to Turf Club by way of warning or other notice, merely because the latter undertook to cash its depositor's checks, which turned out to be dishonored for insufficient funds. Beyond the duty relating to return of the instruments, the drawee bank herein had no duty arising out of a relationship to the holder of the checks which could ripen into tort liability. In the absence of evidence of any agreement, undertaking or contact between plaintiff and defendant from which any special duty can be derived, the

> improper handling of the Zeek account cannot in the abstract serve as a stepping stone for liability to plaintiff.

> [Ibid. (emphasis added).]

We further observed that, despite the wrongful acts of Zeek that had produced the diversion of funds, "[p]laintiff cannot recoup [its losses] by attempting to shift responsibility to the bank which had no relationship with it."  Ibid.

Similar principles were recognized and applied in Globe Motor, supra, another key case relied upon by Judge Furnari.  In Globe Motor, one of the plaintiff company's employees, Gallo, was embezzling money from the company. Supra, 273 N.J. Super. at 391. The company's loan provider, First Fidelity Bank, and the defendant accountants failed to recognize the embezzlement, despite on-site inspections by First Fidelity and reviews by the accountants.  Id. at 392.  Globe Motor sued the defendants, alleging that they were "negligent in failing to detect or prevent Gallo's criminal spree."  Ibid.  The Law Division observed that "creditor-debtor relationships" rarely create a fiduciary duty.  Id. at 393 (internal citations omitted).  The court held that "[a]bsent a contractual duty, a bank has no obligation to manage, supervise, control or monitor the financial activity of its debtor-depositor and is not liable to

its depositor in negligence for failing to uncover a major theft." Id. at 395.

The Supreme Court has endorsed these principles. See, e.g., Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 400 (2009) (rejecting a non-customer's claims against a credit union for negligence and malicious prosecution, noting that "in the unique context of whether a bank owes a duty to a non-customer, it is clear that '[a]bsent a special relationship, courts will typically bar claims of non-customers against banks'") (citing City Check Cashing, Inc. v. Mfrs. Hanover Trust Co., 166 N.J. 49, 60 (2001)).

Here, there plainly was no contractual relationship between plaintiff and the defendants who managed her mother's investment accounts. Defendants had no written or oral agreements with plaintiff, a non-customer. Indeed, there is no proof in the record that they even knew her identity before her mother's death.

As both parties' counsel have represented to us, their research has identified no federal or state statute, regulation, or codified provision that imposes such a duty owed to a non-customer in these circumstances. Nor does plaintiff point to any published industry standard or expert support for such an obligation.

Instead, plaintiff exclusively relies on Morgan Stanley's own internal procedures, which might not have been strictly followed here when the decedent's accounts were converted to joint accounts with Mistri. However, such a proven departure from a company's internal guidelines is immaterial if there is no contractual or "special" relationship established that could support a legal duty to a non-customer and a cause of action for negligence or breach.

During oral argument on appeal, defendants' counsel acknowledged that a special duty to a non-customer may arise in some circumstances where, for example, the firm removes a named beneficiary from an account. But plaintiff was never such a named beneficiary. She had no legal relationship with the firm, nor any reasonable basis to enforce duties it may have owed to her mother as the sole account-holder until her sister was added.

In the absence of a statutory or regulatory mandate, we decline to alter the course of established precedent by recognizing a novel duty in this case. Such a duty arguably might impose undue burdens on financial institutions, and invite meddlesome interference with the relationships between investors and those who manage their accounts. Of course, nothing in our existing case law or in this opinion restricts Congress, the

Legislature or regulatory agencies from imposing such obligations. We leave those policy issues for consideration elsewhere.

We further agree with the trial court that, even if a duty were recognized here, and a breach of it were established at trial, plaintiff cannot prove proximate causation for her losses. See Camp v. Jiffy Lube No. 114, 309 N.J. Super. 305, 309-11 (App. Div.), certif. denied, 156 N.J. 386 (1998). If, in fact, plaintiff's mother was indeed the subject of her sister's undue influence, presumably the account changes would have been made anyway at her behest. Plaintiff's appropriate remedy was in the estate litigation, through which she has already derived a substantial recovery in settlement.

The balance of plaintiff's arguments, including those relating to discovery, lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION